(64 App. Div. 212.)

### OWENS et al. v. OWENS et al.

(Supreme Court, Appellate Division, Third Department. September 4, 1901.)

1. WILLS—LEGACY—LAPSE.
    A legacy to be paid after the death of the testator's wife is a vested legacy, so that it will not lapse by the death of the legatee before that of the widow.

2. SAME—CONSTRUCTION.
    The will of a testator, a large part of whose estate was in unsecured personal obligations, after providing that certain sums should be paid to certain parties as his widow, who was named executrix, should deem best, and that certain amounts should be given to certain legatees after the widow's death, provided: "I give, devise, and bequeath the use, income, and control of the residue of my property, both real and personal, to my wife during her natural life, or so long as she remains my widow, After the death of my said wife, and the payment of the legacies aforesaid, I give, devise, and bequeath all the residue and remainder, if any there be, of my estate," to certain others. *Held*, that such will vested merely a life use in the property real and personal in the widow.
    Parker, P. J., and Edwards, J., dissenting.

Appeal from trial term, Schuyler county.

Action by Mary A. Owens and another, as executors of the will of Thomas Owens, deceased, against Henry Owens and others, for the construction of a will. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

The action was brought for the construction of the will of Thomas Owens, who died upon the 26th of May, 1888. In that will he first directed the payment of his funeral expenses and debts. In the second paragraph he gave to his executors $500 for a monument and the care of his cemetery lot. In the third paragraph he directed that $2,000 of the indebtedness of his brother Henry on bond and mortgage and on a note should remain for Henry's life without interest, and at Henry's death should be divided among certain heirs. In the fourth paragraph he directed a loan of $1,000 to his brother Benjamin Owens, to remain without interest until the death of said Benjamin Owens, at which time the said $1,000 was to go to the heirs of the said Benjamin. In the fifth paragraph he gave a farm to Esther M. Gustin upon condition that she pay $500 to his estate after his death.

As to these provisions there is no question. In the sixth paragraph of the will he directs his executors to pay to Phoebe Doty the annual interest on $1,000, and any part of the principal that may be necessary for her support. In the seventh paragraph he gives to one Teed D. Owens the sum of $1,500, to be paid "in such sum or sums, and at such time or times, after my decease, as my wife, Mary A. Owens, shall deem best in her discretion." In the eighth paragraph he gives to one Ellen Smith the sum of $500, "to be paid to her at any time after my death, in the discretion of my wife, or the survivor or survivors of my executors hereinafter named." In the ninth paragraph he gives to Thomas Owens $500, and Mary Peck $250, and George Vance $250, to be paid after the death of his wife. Paragraphs 10 and 11, upon which the main controversy depends, read as follows:

"Tenth. I give, bequeath, and devise the use, income, and control of the rest, residue, and remainder of my property, both real and personal, of which I may die seised or possessed, of every name and nature, not herein before disposed, to my beloved wife, Mary A. Owens, for and during her natural life, or so long as she remains my widow.

"Eleventh. After the death of my said wife, and the payment of the legacies aforesaid, I give, devise, and bequeath all the rest, residue, and remainder, if any there be, of my estate, both real and personal, to my brother, Henry Owens, Benjamin Owens, and William Owens, equally, and, if any of them be dead, to their heirs the share the parent would be entitled to if living."

The testator then directs that no inventory of his personal property be made, but that his executrix and executors keep strict account of all moneys paid out by them for or upon legacies payable before the decease of his wife; and finally he names his wife as executrix, and one Woodward and one Smith as executors, of his will.

Argued before PARKER, P. J., and SMITH, KELLOGG, EDWARDS, and CHASE, JJ.

M. J. Sunderlin, for appellants.

Charles H. Everts, John R. Taylor, and M. N. Cane, for respondents.

SMITH, J. Two questions are presented for decision: First. Was the legacy to Mary Peck in the ninth provision of the will a vested legacy, so that it did not lapse by the death of Mary Peck before the death of the widow? The trial court has held that it was, and with this conclusion we entirely agree.

The second, and more important, question is as to the estate given to the widow by the tenth and eleventh paragraphs of the will. The trial court has found that she has simply taken a life estate in the

property real and personal. The contention of the widow is that she has more than a life estate, and has the right to use so much of the corpus of the property as she may need or desire during her life.

The provisions of the tenth paragraph of the will are explicit. In that paragraph there is no devise or bequest to her of anything more than the use, income, and control, and that only for her life, or while she shall remain unmarried. Upon this appeal the meaning of this paragraph, standing alone, is not questioned by her. Her argument, however, is that in the eleventh paragraph she is impliedly given a greater estate, because the estate given to the remainder-men is qualified by the phrase "if any there be." She contends that this phrase indicates an intention in the testator to give to her the right not only to the use of the property, but to the principal thereof, if she shall have need or desire to use the same.

This construction can only be justified if the phrase "if any there be," limiting the estate which goes to the remainder-men, could have no other significance. If, however, this phrase can be given any other significance whatever, it will not operate to enlarge the estate so explicitly and clearly given to her by the tenth paragraph of the will.

In the seventh paragraph of the will $1,500 is directed to be paid to one Teed D. Owens in such sums and at such times as the widow of the testator shall deem best. In the eighth paragraph $500 is to be given to Ellen J. Smith under similar conditions, and in the ninth paragraph $1,000 is to be given to three legatees after the death of the widow. No provision is made as to the income from the $1,500 or $500 or $1,000 provided in the seventh and eighth and ninth paragraphs of the will before payment to the legatees. The use of these moneys, therefore, before payment to the legatees, would clearly, under the tenth paragraph of the will, belong to the widow. The legacies under the seventh and eighth paragraphs of the will were to be paid at such times as to the widow should seem best. If, however, they were not paid during the life of the widow, it is clear that those legacies, as well as the legacy in the ninth paragraph of the will, must be paid after the death of the widow, and prior to the distribution of the residuary estate. It is thus provided in the beginning of the eleventh paragraph: "After the death of my said wife, and the payment of the legacies aforesaid, I give, devise, and bequeath all the rest, residue, and remainder, if any there be, of my estate, both real and personal." By reference to the inventory that is in the record, a large part of the estate was in personal obligations unsecured. The testator might well, therefore, have contemplated that with the possibility of losses upon securities, with the expense of administration, with the destruction incidental to the use, and with the payment of the legacies provided for, the personal property, if not all of his property, might be consumed, and nothing would be left for the remainder-men. The provision is, in substance, that what remained of his real and personal property, "if any there be," shall pass to the remainder-men. If, under the provisions of the will, the personal property alone might be exhausted, either in the payment of legacies, debts, or otherwise, before the time of the pay-

ment, the phrase "if any there be" might be deemed to contemplate that contingency, even though the testator had in mind that the real estate would remain for the remainder-men. To give significance, therefore, to the phrase in controversy, it is not necessary to find an intention in the testator to give to the widow any greater estate than is explicitly given to her in the tenth paragraph of the will. The construction contended for by the widow is a violent one, to be adopted only in case of imperative necessity. In the case of Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950, the will gave to the wife "all the rest, residue, and remainder of my estate," and then concludes: "On my decease, the remainder thereof, if any, I give and devise to my children." It was there held that the phrase "if any" limited the estate of the remainder-men, and characterized the estate of the widow as an estate greater than a mere life estate. In that case it was found that under the terms of the will the phrase "if any" could be given no other significance. In the case at bar the testator's property was not given to the widow, but only a life use thereof, and the phrase "if any there be," as qualifying the estate of the remainder-men, may be given full significance without reflecting to enlarge the estate of the life tenant.

In the case of Kendall v. Case, 84 Hun, 124, 32 N. Y. Supp. 553, a life use only was primarily given to the wife, and the use in the will thereafter of the phrase "if any is left," in referring to a power of sale of the property, was construed to enlarge her life estate to a right to use the corpus of the property. But in that case, under the terms of the will, no other significance could be given to the phrase "if any is left." Recognizing, for the argument, the full force of the decisions quoted, the implied power contended for by the widow from the use of the expression "if any there be" in paragraph 11 is not only not found by necessary construction, but is one unwarranted either by the context of the will or by the surrounding circumstances which give character to the expressions therein used. We agree, therefore, with the learned trial court in the conclusion reached.

Judgment affirmed, with costs. All concur, except PARKER, P. J., dissenting in an opinion in which EDWARDS, J., concurs.

PARKER, P. J. I cannot concur with the conclusion which the court has reached in this case. By the first nine clauses of his will the testator disposed of some $7,500 of his estate in pecuniary legacies, and it appears from the inventory filed that he had ample personal estate to pay them all. All the rest of his estate, by the tenth clause of his will, he directs that his wife shall have the control of during her life, or so long as she shall remain his widow. Among that residue was a farm of some 128 acres, valued at about $5,000. In such tenth clause he gives her the use of such residue by the following language:

"Tenth. I give, bequeath, and devise the use, income, and control of all the rest, residue, and remainder of my property, both real and personal, of which I may die seized or possessed, of every name and nature, not hereinbefore disposed of, to my beloved wife, Mary A. Owens, for and during her natural life, or so long as she remains my widow."

By the eleventh clause he provides as follows:

"Eleventh. After the death of my said wife, and the payment of the legacies aforesaid, I give, devise, and bequeath all the rest, residue, and remainder, if any there be, of my estate, both real and personal, to my brothers, Henry Owens, Benjamin Owens, and William Owens, equally, and, if any of them be dead, to their heirs the share the parent would be entitled to if living."

The question is whether, under these provisions, the widow has not a power of disposition during her life, as well as the use and income from the property in such clauses referred to. I am of the opinion that it was the intention of the testator to give her such a power. By the provisions of this tenth clause he evidently intended to devote all of his estate, except the pecuniary legacies previously given, to caring for and supporting his wife during her widowhood. He puts it all under her control, and gives to her the use and income from it all. But in this clause he does not make any provision for disposing of any of it after it shall have answered that purpose. By the eleventh clause he makes provision for that. Evidently, this eleventh clause refers to the same property that he had previously put into her control. It can apply to no other; and the design clearly is to give it to his three brothers after she shall no longer need it. But in the provisions by which he disposes of it after her death he uses the phrase "if any there be." Here is a clear indication that he apprehended, or at least recognized the possibility, that there might not be anything left of the fund that he was then about to dispose of. That fund was the very one that he had put into the control of his wife, and devoted to her support during her life, and here he recognizes that at the end of her life there may not be anything left to be disposed of. If his idea had been that during her life she was to use only the income therefrom, clearly it could not have occurred to him that upon her death nothing of the principal would remain. Possibly he might have expected that such personal property as would wear out in the using would be then missing, but clearly he would never suppose that the farm of 128 acres would not be left, nor such of the moneys as were invested in securities for her benefit. The phrase is utterly meaningless unless he had the idea that she had the right to use up something more than the mere income. The very fact that he attempts to dispose of, after her death, only so much as shall be left at her death, instead of the whole property given to her use and into her custody, shows very clearly an intent on his part to permit her to so treat such property that, possibly, none of it would then be left. True, in the tenth clause he does not, in clear terms, express any such purpose, but it seems very clear that he supposed he had given her such a power; and it may be that in his own mind he gave a much more extended meaning to the word "control" than its ordinary meaning would suggest. It is also clear that the testator, by the use of that phrase, did not have in mind the fact that some pecuniary legacies were to be paid after the death of his wife. None but the three named in the ninth clause were to be thereafter paid, and it is to be first noticed that the $1,000 needed to pay them is not in fact devoted to the use of

his wife during her life. That $1,000, having been "disposed of" by the ninth clause, is not included in the rest and residue given to her by the tenth clause. Strictly it is no part of the fund the use and control of which was given to his wife, and which is subsequently referred to in the eleventh clause. But, if we concede that such $1,000 was to be included in the amount set apart for the use of the wife during her life, and hence must be extracted therefrom upon her death, it clearly would not deplete that fund so as to leave nothing upon her death. A farm of 128 acres, and of the value of $4,500 or $5,000, would, beyond all doubt, be left at the wife's death, if she was to use nothing but the income of the "rest and residue" referred to in such tenth clause. The plain recognition by the testator that such farm might not be "left" at her death clearly indicates an intention on his part that she have the right to dispose of it. As to the legacies given by the seventh and eighth clauses, it is clear that they were intended to be no part of the fund set apart to the wife, and referred to in the tenth and eleventh clauses. Plainly, it was intended that they should be paid before the wife's death. She was not to have the control or use of them. They were completely "disposed of" by the seventh and eighth clauses, and, as to them, he could not have supposed that their payment would, upon her death, deplete the fund left to her use and control. The disposition in the two clauses above quoted is very similar to that construed in the case of Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950, and the reasoning of the court at page 11, 132 N. Y., and page 951, 29 N. E., is authority for the conclusions adopted here. See, also, Kendall v. Case, 84 Hun, 124, 32 N. Y. Supp. 553; Thomas v. Wolford, 49 Hun, 145, 1 N. Y. Supp. 610; and other cases there cited. I conclude, therefore, that the widow took a life estate in the property mentioned in such tenth clause, with a power to dispose of the same, or any part thereof, to be exercised during her life or widowhood for her own benefit, and that the three brothers named in the said eleventh clause took a remainder therein in fee, subject to the exercise of such power. In these respects the judgment appealed from should be reversed, and made to conform to such conclusions.