In re SKINNER.

(Supreme Court Appellate Division, Fourth Department. March 10. 1903.)

1. WILLS—CONSTRUCTION—ESTATE DEVISED—EXTENT.

Where testator bequeathed to his wife the use of the residue of his mortgages, bonds, notes, etc., the debts thereby represented, and the moneys due thereon, during her life, and on her decease bequeathed to his children "all the rest and residue thereof then remaining," share and share alike, the subsequent phrase, "all the rest and residue thereof then remaining," did not show an intention to vest in the widow an absolute right to convert the property referred to, and enlarge the scope of the bequest from a life use of the property to absolute ownership.

2. SAME—LIFE ESTATES—INVESTMENT OF CORPUS—RIGHTS OF REMAINDERMAN.

Where a will devised property to testator's widow for her use for life, with power of disposition, remainder to testator's children, the administratrix of one of such remaindermen had sufficient contingent interest in the property devised to entitle her to maintain a petition for an accounting, to ascertain whether the property was safely invested.

Adams, P. J., and McLennan, J., dissenting.

Appeal from Surrogate's Court, Oswego County.

Petition by Cora Skinner, as administratrix, etc., to compel an accounting by Sarah Parker, as executrix of the estate of George O. Parker, deceased. From a decree dismissing the petition, petitioner appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and NASH, JJ.

E. J. Mizen, for appellant.
J. D. McCaffery, for respondent.

SPRING, J. This appeal from the decree of the Surrogate's Court involves the construction of the will of George O. Parker, deceased, and particularly of the fourteenth subdivision thereof, which, so far as pertinent to the pending controversy, reads as follows:

"After the payment of all my debts and funeral expenses as above provided, I give and bequeath to my said wife, Sarah Parker, the use of all the rest and residue of my mortgages, bonds, notes, accounts, etc., the debts thereby represented and the moneys due thereon * * * during her natural life, and on her decease I give and bequeath to my said children * * * all the rest and residue thereof then remaining share and share alike."

The respondent claims that the life use of the property given to her by the first part of the clause quoted is enlarged by the subsequent phrase "all the rest and residue thereof then remaining," thereby conferring upon her the absolute right to convert and dispose of the property referred to, and the learned surrogate has so interpreted the will. In this, we think, he is in error. The rule underlying his decision that import must be assigned to every clause in the will, if possible to do so, rather than reject any clause as surplusage, is a familiar one, and we apprehend it is unnecessary to trench upon it in the construction of this will. The language which gives "the use" to the widow "during her natural life" is clear and explicit. There is no express authority in the will bestowing upon her the right of disposition, and this declared purpose of the testator to give the use of

his property to his widow should not be extended, unless the intention so to do is obvious from the context of the will itself. It is plausibly urged that the miscellaneous nature of the property bequeathed indicates that there would naturally be a diminution from its face value. Notes, accounts, and debts aggregating many thousand dollars would inevitably shrink appreciably from their nominal estimate when converted into cash, and the testator desired it thoroughly understood that his widow was not the guarantor of this property at its par value, but was only responsible for what she succeeded in collecting. This in and of itself affords a sufficient explanation for the insertion of the clause quoted.

Beyond this, we believe the general scheme of the will explains somewhat the significance of the clause in question. The third paragraph contains the only devise in fee to the widow, and upon that was an incumbrance of $2,700. He directed that this lien be paid out of his personal estate, in order that his wife's holding of the devised estate might be free from incumbrance. In the eleventh subdivision he directed the payment of his debts and funeral expenses out of the particular personal property "mortgages, bonds, notes, accounts, etc.," enumerated specifically as passing to the widow for life in the fourteenth paragraph. The testator also devoted the income of the two mortgages against his brother John to the support of his mother while she lived, and then charged the support of the sister of his wife upon these two mortgages to the extent of using the principal thereof for that purpose, if necessary. This charge might be of long continuance, and years might elapse before the proceeds to be distributed among his children were ascertainable. These complications may have been of potential importance when the testator had in mind the restriction of the property passing to his children to what remained when his widow died. He did not wish her estate trammeled or herself hampered because his personal estate was to be substantially reduced for these various purposes.

It is also to be observed that the right or interest of the wife is "after the payment of all my debts and funeral expenses," which, as has been suggested, are particularly provided for in the eleventh paragraph. The bequest is not made categorically after the payment of the lien on the house and lot devised to her. As a question of construction, this, of course, would follow; but it justifies the suggestion that the testator may have had in mind the lessening of the fund by the payment of this mortgage. We are not construing the fourteenth paragraph for the purpose of ascertaining whether the fund which passes to the widow is before or after the payment of the debts and mortgage liens mentioned. The will determines that question clearly. We are simply alluding to these several provisions of the will for the purpose of indicating that the clause which it is urged extends the life use of this property is susceptible of a reasonable construction without enlarging the scope of the bequest.

The other portions of the will show that the testator had a definite conception of the words "the use of," "for her natural life," as well as "in fee." Again, it is to be understood that the household furniture, carriage, etc., are given to the wife to use during her natural

life; that is, the more common personal property about the house, and which, by ordinary use, would be in part consumed, is only given to the widow for life. Two purposes seem to have influenced the testator to make the disposition of the personal property in a separate paragraph instead of embodying it in the item in which the household furniture·is contained: First, in order that it might appear without confusion that the debts, etc., were to come from this property; and, second, to keep separate and distinct the miscellaneous property from that embarked in the oil business, and which latter is specifically taken care of in the will. Full significance may, therefore, be given ·to the words "all the rest and residue thereof then remaining" without amplifying the use for life so definitely expressed in this fourteenth paragraph.

Many authorities are cited by the counsel for the respondent to uphold the conclusion reached by the surrogate, but they are not applicable. These cases may be divided into two classes: First. Those in which an estate in fee is devised, and which is sought to be pared down by a subsequent clause. The courts adhere quite rigidly to the rule not to defeat the primary purpose unless the intent of the testator so to do is manifest. This series of cases rest upon a rule of construction peculiar to itself. The reasoning upon which it is based, carried to its full extent, supports the principle by analogy for which we are contending; that is, where the will in unambiguous language gives a specific estate, it will not be amplified or lessened by subsequent provisions, unless it is apparent it was the intention of the testator so to enlarge or lessen it. Second. That class of cases where the interjected clause, kindred in expression, we concede to the one in the will under discussion, limits the ultimate taking to what may be left after the widow has used whatever she needs. In each of those cases there was a bald naked clause unexplained by any other part of the will, and this clause had to be interpreted literally or rejected wholly. These are both technical canons of construction, and, after all, each will depends upon its own language for its interpretation, the overruling principle being that the intent of the testator as gathered from the language used must dominate. Owens v. Owens, 64 App. Div. 212, 71 N. Y. Supp. 1108, and Matter of Runcie's Estate, 36 Misc. Rep. 607, 73 N. Y. Supp. 1120, are in line with our position.

In any event, the petition should not have been dismissed. The right of the widow in the property, in its aspect most favorable to her, was not an absolute one, but a right of disposition during her life. The petitioner, therefore, had sufficient contingent interest to justify her in endeavoring to ascertain whether the property was safely invested or otherwise. Code Civ. Proc. § 2514, subd. 11; Donlon v. Kimball, 61 App. Div. 31, 70 N. Y. Supp. 252. The decree of the surrogate. should be reversed, with the costs and disbursements of this appeal.

Decree of the surrogate reversed, with the costs and disbursements of this appeal.

WILLIAMS and NASH, JJ., concur.

ADAMS, P. J. (dissenting). I find myself unable to concur in the opinion of Mr. Justice SPRING in this case. It is a familiar rule, and one applicable to this, as well as to all similar, cases, that construction should be given to a will, or any portion thereof, with regard to the intent of the testator, when such intent can be ascertained from the language of the instrument itself; and with this rule in mind I find no difficulty in giving to the fourteenth clause of the will in question the same interpretation as that adopted by the court below. By this clause the testator gave to his wife the use of all the rest and residue of my mortgages, bonds, notes, accounts, etc., and the debts thereby represented, and the moneys due thereon, with certain exceptions, which it is unnecessary to specify, during her natural life, and at her decease he gave and bequeathed to his children "all the rest and residue thereof then remaining, share and share alike." Giving to the words of this clause their natural meaning, it seems to me quite plain that the testator intended that his wife should have not only the income arising from the property mentioned, but the right to use that property for her individual benefit during her lifetime, and hence to dispose of the same, or any portion thereof, as she might deem proper; otherwise it may be asked why the testator expressly provided for the disposition of all the rest and residue remaining of the property specifically referred to in this clause at the death of his wife. The words "then remaining" certainly should be given some meaning, if possible; and I can conceive of no reasonable construction to be placed upon them, in view of their context, other than the expression of an intention upon the part of the testator to permit his wife to so use and dispose of the corpus of the property bequeathed to her in the fourteenth clause of his will as that but a portion thereof, if any, would be left at the time of her death.

The views to which I have here given expression are not only in accord with what I believe to be a reasonable rule of construction, but they are apparently supported by authority. Flanagan v. Flanagan, 8 Abb. N. C. 413; Thomas v. Wolford, 49 Hun, 145, 1 N. Y. Supp. 610; Kendall v. Case, 84 Hun, 124, 32 N. Y. Supp. 553; Smith v. Van Ostrand, 64 N. Y. 278; Campbell v. Beaumont, 91 N. Y. 464; Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950.

McLENNAN, J., concurs.