of Mr. Marsh makes it clear that there are no legatees for whom the plaintiff may hold the estate in trust, for he himself is the sole legatee, but not so as to the creditors. Until it is rebutted, the presumption is that there are creditors for whom the executor or administrator holds the personalty of the estate in trust. During the whole progress of the Blood Case, supra, and in the decision in the Court of Appeals itself, this rule seems to have been supposed to exist, for it was not considered that the defendant, sued individually, could offset a debt owing by the plaintiff to the estate of which she was executor and sole legatee until proof was made that all of the debts of her testator had been paid. The defendants have failed to make any showing sufficient to deprive him of the right to maintain the action, which plaintiff possessed by virtue of his representative character, and the judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur; HIRSCHBERG, P. J., in result.

---

(101 App. Div. 25)

## In re CORBIN'S WILL.

(Supreme Court, Appellate Division, Second Department. January 20, 1905.)

1. WILLS—EXECUTORS—POWERS—RIGHT TO CARRY ON TESTATOR'S BUSINESS.

Testator had invested money in a corporation to the extent that he owned nearly all of its stock and bonds. He conferred on his executors power to manage, control, invest, and reinvest the residuary estate and the income thereof, and sell or convey all or any part thereof, with or without covenants, in their discretion. *Held*, that they were not warranted in carrying on the corporate business, especially in view of a codicil commanding them to incur no debts except in liquidation of debts outstanding at testator's decease.

2. LIFE ESTATE—LIABILITY FOR TAXES.

A life tenant is liable for the taxes which become a lien during the existence of the life estate.

3. EXECUTORS—ACCOUNT—CONTEST—COSTS—STATUTE.

Where some of the objections of a contestant to the account of executors are well founded as to material matters, the imposition of costs against the contestant is unwarranted under Code Civ. Proc. § 2557, providing that except where special provision is otherwise made by law, costs awarded by a decree in a Surrogate's Court may be made payable by the party personally.

4. SAME—MISTAKE—EFFECT.

Where executors, through a mere blunder, in good faith charge themselves with a fund for which they are not liable to account, a beneficiary under the will can take no advantage thereof.

5. SAME—MONEY USED IN KEEPING UP MARKET PRICE OF STOCK.

Where a decline in the market price of the stock of a corporation in which testator was a stockholder, and on which stock he had borrowed large sums of money, would be injurious to the estate, the executors were entitled to credit on their account for money used in keeping up the market price under a contract of testator with another person to keep the price up in their joint interest, and such other person performed the agreement on his part.

Woodward, J., dissenting in part.

Appeal from Surrogate's Court, Suffolk County.

In the matter of the judicial settlement of the accounts of Hannah M. Corbin and others, executors of the will of Austin Corbin, deceased. From a decree settling the accounts, Anne W. C. Borrowe, contestant, appeals. Modified.

See 89 N. Y. Supp. 1102.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Charles F. Brown, for appellant.

John E. Parsons, for respondents.

WILLARD BARTLETT, J. The decree of the Surrogate's Court in this proceeding should, I think, be modified in three respects: (1) By deducting $106,524.34 from the amount credited to the executors and trustees on account of payments to the Sunnyside Company; (2) by disallowing the amount credited to the executors and trustees for taxes and necessary repairs upon the Fifth avenue property in the borough of Manhattan, in which the widow was given a life estate under the will; and (3) by striking out the direction that the costs and expenses of the proceeding to the extent of $16,159.40 be charged against the contestant, Anna W. C. Borrowe personally, and by inserting in lieu thereof a direction that such costs and expenses be paid out of the estate.

1. The executors and trustees paid $186,143.75 to the Corbin Banking Company on account of the Sunnyside Company, after Mr. Corbin's death. Of this sum $79,619.41 represented an overdraft by the Sunnyside Company upon the Corbin Banking Company, for the repayment of which it may be held that the estate was liable. It does not seem to me, however, that any authority can be found in the terms of the will or in the law for the payment of the balance of $106,524.34 to the Sunnyside Company. Notwithstanding Mr. Corbin's ownership of most of the bonds and stock of that foreign corporation, the fact cannot be ignored that it was a distinct corporate entity, to which no moneys of the estate as such could properly be paid except in discharge of some legal obligation of the testator. There was no such legal obligation, so far as this balance of $106,524.34 was concerned. It can readily be understood that the executors and trustees may have deemed it conducive to their own best interests personally, as legatees and devisees under the will, to maintain this Arkansas land enterprise in which the testator had invested so much of his money; but they could properly aid it only at their individual expense, and not by using the funds of the estate to the diminution of the contestant's share therein without her consent. The learned counsel for the respondents argues that Mr. Corbin was the Sunnyside Company, and the surrogate, in dealing with this branch of the case, appears to have treated the Sunnyside property as though it belonged to Mr. Corbin individually, and had been left by him to his executors in trust. Even if this view were correct, and the business of the corporation could properly be deemed the individual business of Mr. Corbin, the executors were nevertheless without power

to carry it on in the absence of any direction in the will authorizing them to do so. I cannot spell out any such direction from the clause concerning the residuary estate, which empowers the executors to "manage, control, invest and reinvest the same and the income thereof and sell or convey all or any part thereof with or without covenants in their discretion." There is no "explicit authority" here to carry on a business after the testator's death, such as the law requires (Columbus Watch Co. v. Hodenpyl, 135 N. Y. 430, 32 N. E. 239), and the idea that Mr. Corbin intended to confer any such power upon his executors is distinctly negatived by the clause in the codicil commanding them to incur no debts except in liquidation of debts outstanding at his decease.

2. The general rule is that a life tenant is liable for the taxes which become a lien during the existence of the life estate. Deraismes v. Deraismes, 72 N. Y. 154. Under this rule I do not see how Mrs. Corbin can be relieved from the payment of the taxes on the Fifth avenue property in Manhattan.

3. Under the circumstances, I think that portion of the decree which charges the contestant personally with $16,159.40 costs of this proceeding constitutes an abuse of discretion, in the legal sense of that term, which requires a modification so as to make the costs payable out of the estate, under section 2557 of the Code of Civil Procedure. See Matter of Selleck, 111 N. Y. 284, 290, 19 N. E. 66. The personal imposition of costs under this section has generally been deemed punitive in character, and does not seem to be justified as against a contestant some of whose material objections were well founded and should have been sustained by the surrogate.

As to the other questions presented by this appeal, I find no sufficient reason for differing from the conclusions reached in the court below. The most important of these questions relate, first, to the claim of the contestant that the executors should have been charged with $723,246.26, instead of $423,246.26, as the balance to the credit of the testator on the books of the Corbin Banking Company at the time of his death—a difference of $300,000; and, secondly, to the alleged error of the surrogate in allowing the executors credits for payments made to R. J. Kimball & Co., a firm of brokers, on account of the purchase of stock of the Long Island Railroad Company. In reference to the $300,000 item, I think the proof, irrespective of any evidence which may be deemed incompetent under section 829 of the Code, suffices to show that this amount was really capital contributed by Mr. Corbin to the Corbin Banking Company, which was in fact only a copartnership, although bearing a corporate title. This appears not only by the testimony of Mr. William G. Bosworth, formerly cashier of the Corbin Banking Company, but also by the written declaration of Mr. Corbin himself under date of December 14, 1893, directing that the $60,000 interest of Mr. George S. Edgell in the concern should be paid next after the debts of the company, and should be preferred to his special deposit of $300,000. None of this $300,000 ever in fact came into the hands of the executors. It was treated and used as

part of the capital of the Corbin Banking Company; and it is manifest that the item figures in this litigation only by reason of the mistake of the executors in assuming at one time that they were liable to account for the sum as a debt from the firm to Mr. Corbin. In the brief for the appellant it is truly said that, "if Mr. Edgell and Mr. Corbin, Jr., by their action in regard to the $300,000 item, have placed themselves in an embarrassing position, it is no fault of the contestant." On the other hand, it would be very unjust for the court, on account of a mere blunder in good faith on their part, to fine these gentlemen an amount representing Mrs. Borrowe's alleged interest in $300,000 of her father's estate.

Finally, I think that the Kimball payments were properly allowed. They were made pursuant to a contract between Mr. Corbin and Mr. Charles M. Pratt for the purpose of keeping up the market price of Long Island Railroad Company stock in their joint interest. Mr. Pratt fully performed the agreement on his part, and was entitled to insist upon performance by Mr. Corbin and his executors. Chamberlain v. Dunlop, 126 N. Y. 45, 52, 26 N. E. 966, 22 Am. St. Rep. 807. The facts concerning the transaction are fully set forth in the findings of the surrogate, Nos. 79 to 82, inclusive, and seem to me fully to sustain this view as to the legal obligations of the parties. But, even in the absence of any contract under which Mr. Corbin's executors could have been compelled to make payments to sustain the price of this stock, I am inclined to think that they were justified in doing so by reason of the very injurious results to the estate of their testator which the proof shows would have followed a decline in the market. See Ripley v. Sampson, 10 Pick. 371; Collinson v. Lister, 20 Beav. 364. It was the duty of the executors to protect the estate, and, in view of the magnitude of the loans to Mr. Corbin secured by Long Island Railroad Company stock, which would at once have been called in if any considerable depreciation occurred, it is difficult now to perceive how the executors could otherwise have averted what would have been an overwhelming disaster to all persons interested in the property.

I am satisfied that a modification of the decree of the Surrogate's Court to the extent which I have recommended will do substantial justice as between these litigants. It is to be hoped that it may also be effective to terminate an unfortunate family controversy.

Decree modified, and, as modified, affirmed, without costs of the appeal to either party. All concur, except WOODWARD, J., who votes for affirmance.