In the Matter of the Final Judicial Settlement of the Account of Proceedings of WILLIAM VICTORIN, as Executor, etc., of FRIED-ERIKE A. LIMBURGER, Deceased, Who Was Executrix of the Last Will and Testament of HENRY N. LIMBURGER, Deceased.

Surrogate's Court, Westchester County, January, 1927.

Wills — construction — decedent gave income from his estate to widow for life, with authority to use principal — gift to widow was life estate with right to use income, and principal, if she needed it — residuary legatees entitled to estate remaining on widow's death — accounting — depreciation of value of corporate stock is not chargeable against widow — $100 forfeited on non-performance of real estate contract credited as addition to principal — taxes, insurance premiums and repairs to real estate are chargeable to general estate — equitable conversion — widow not entitled to share of increase in value of unsold real estate.

A will by which the decedent gave the income derived from his estate to his widow for and during her natural life, with authority, in her discretion, to use in addition to said income so much of the principal of his estate as she might desire for her own individual need, and to sell real estate and invest the proceeds, must be construed as giving to said widow a life estate in decedent's property, with the right to use the principal, as well as the income, if she needed it; decedent did not create a trust for his widow, and upon her death the residuary legatees became entitled to any of the estate which remained.

The retention by said widow of shares of stock of a corporation does not make said widow chargeable with any loss because of the depreciation of the value of the stock, for no agency or trust was created with its resultant requirements; furthermore, no fraud is charged and she appears to have acted in good faith.

The sum of $100, forfeited upon the non-performance of a real estate contract, must be treated as capital and credited as an addition to the principal of the estate and not as income.

All taxes, insurance premiums and sums paid by the widow for repairs to the real estate must be dealt with on this accounting as chargeable to the general estate — the capital account.

On this accounting the widow should not be allowed a proportionate share of the increase in the value of the vacant real estate, still unsold, pursuant to the principle of equitable conversion.

PROCEEDING for an accounting involving the construction of a will.

*Albert F. Gescheidt* and *Ralph Gillette*, for the executor.

*Sydney A. Syme*, for Josephine M. Tierney.

*Morgan & Bagg*, for Mount Vernon Trust Company, trustee.

*Frank M. Buck*, special guardian.

SLATER, S. In disposing of the objections to the account it becomes necessary to construe the will of the testator, who died May 4, 1912, leaving a will dated July 28, 1909, probated in the surrogate's office of Westchester county May 17, 1912. The testator left a widow who survived until January 31, 1922, and a daughter Josephine, the present life beneficiary, who, together with the trustee now acting, become objectors.

The 1st objection relates to the sale of property at No. 43 North High street, Mount Vernon, N. Y. No evidence was taken regarding this objection because the question is before the Supreme Court for determination, in the action of *Tierney* v. *Victorin.*

The 2d objection relates to a loss resulting from the failure of the widow, the life tenant, to dispose of twenty-five shares of stock in the American Sugar Refining Company. This objection requires the court to construe the will.

The 2d paragraph of the will says: " I give and bequeath unto my beloved wife Friedericke A. Limburger, the income derived from my estate, real, personal and mixed, for and during the term of her natural life, upon the express condition, however, that she is to provide for the maintenance of my daughter Josephine M. * * *."

The 3d paragraph gives all the household furniture, and all other articles " contained in the house in which I shall reside at the time of my death to my wife *for her life.*"

The 4th paragraph authorizes the wife in her discretion " to use, in addition to the income derived from my estate, so much of the principal thereof as she may desire for her own individual need, but I vest my wife only with this power to encroach on the principal."

The 5th paragraph relates to the power of sale, viz.: " I hereby authorize and empower my Executrix, my wife, hereinafter named, to grant, bargain and sell any or all of the real estate of which I shall die seized at such time and in such manner and on such terms as to her shall seem proper, and to give good and sufficient instruments to convey the same. It is my wish, however, that the unimproved property be sold first."

The 6th paragraph directs the executors to invest the proceeds arising from the sale of any of the property.

The 8th paragraph names the wife the sole executrix.

The gift to the widow was a life estate. Under the terms of the will the life tenant, the widow, was entitled to the possession of the corpus of the estate without giving security. A trust for the widow was not created. (*Hodgman* v. *Cobb*, 202 App. Div. 259, 265.) The testator intended the life beneficiary to have possession

of the estate and trusted to her not to waste, misuse or otherwise dispose of the corpus. The testator himself dispensed with the legal safeguards. (*Matter of Ungrich*, 48 App. Div. 594; affd., 166 N. Y. 618.) The widow had the right under the will to receive the estate as life tenant, to use the income and also to *use the principal, if she needed it.* She became its custodian. The gift of income created an estate therein and the executrix, as such, had no interest in respect thereto. On her death the residuary legatees were entitled to *any of it that remained.*

There is a vastly different result flowing from a legal life estate and a legal life estate with the addition of the *power of disposing of the principal during life.* (*Matter of McDougall*, 141 N. Y. 21.) In the former case the life tenant has simply the income, and cannot take possession of the corpus of the property without giving security. (*Matter of Colwell*, 181 App. Div. 408.) In the latter case the rule is that security is not required. (*Matter of Trelease*, 49 Misc. 205; 115 App. Div. 654; *Smith* v. *Van Ostrand*, 64 N. Y. 278; *Matter of Ungrich, supra; Matter of Benedict*, 16 N. Y. Supp. 716.)

The instant case falls within the principle set forth in *Tillman* v. *Ogren* (227 N. Y. 495, 502) and *Matter of Hart* (122 Misc. 124). In *Matter of Davies* (242 N. Y. 196) the court has given the fullest effect to what may occur when a life estate is given coupled with the power to dispose of it. The provision that the widow could encroach upon the principal for her need clearly indicates, *first,* that she and the daughter are to be supported from the gross income so far as the same would suffice, and, *second,* from the principal in such amount as might be necessary, in addition to the gross income for the need of the widow. The presence of the provision permitting the widow to encroach upon the principal for her need does not entitle the subsequent beneficiary to any estate in the property of the testator save only in the event that, upon the death of the life tenant, the *part of the principal remaining shall pass to the beneficiaries.* The provision permitting the widow to use the principal tends to enlarge the estate of the life tenant, and limit the gift over to remainderman. The dominant idea in the testator's mind is clear, that the widow was to receive the fullest measure of income. Provisions for the benefit of a wife should be construed liberally in her favor. (*Moffett* v. *Elmendorf,* 152 N. Y. 475.)

The executrix had the right to hand the estate over to herself as life tenant without giving security as trustee for the remainderman. It was not placed in her hands as a trustee. During her life she was not a trustee. (*Hasbrouck* v. *Knoblauch*, 130 App. Div. 378, 385.) No application for security was made to a court.

Surrogate's Court, Westchester County, January, 1927. [Vol. 128

However, the Supreme Court, prior to 1914, had jurisdiction to require it. (*Matter of Blauvelt*, 131 N. Y. 249, 253; *Matter of Skinner*, 81 App. Div. 449; affd., 180 N. Y. 515; *Matter of Michel*, 160 N. Y. Supp. 520.) A life tenant is not a trustee in the sense in which that term is used in courts of equity and in the statute. In holding the shares of the stock of the American Sugar Refining Company as life tenant for the purpose of receiving its income and handing it over to the remainderman, the life tenant was not chargeable with any loss because of the depreciation of the value of the stock. The terms of the testator's will made this legal result possible. No agency of trustee was created with its resultant requirements. No fraud is charged. The life tenant acted in good faith. (*Matter of Blauvelt, supra.*)

Objection 4 relates to the disposition of $100 forfeited upon the non-performance of a real estate contract. The sum of $100 received in this manner should be treated as capital and credited as an addition of the principal of the estate and not treated as income. Profits realized upon sales do not belong to a life tenant as income. It is principal.

Objection 9 relates to certain items for tax payments amounting to $1,180.60. The question was raised as to when they became a lien, whether before the testator's death, or shortly thereafter.

Objection 10 relates to certain other charges of items for tax payments, the objectors claiming they were an obligation of the life tenant, the widow contending that the gross income was given to the lift tenant. Are the taxes and repairs to be charged to capital, or income? These two objections will be considered as one.

A gift to one for life imposes on the life tenant the duty to pay taxes and ordinary repairs. It is the general rule. (*Matter of Corbin*, 101 App. Div. 25.) This is true unless there is some provision in the will, or it is the fair intent of the testator to be gleaned from his words, or by implication to the contrary. Should the ordinary rule be applied to the instant case? I think not. The reason therefor we will find within the four corners of the testament. It will be observed that by the 2d paragraph of the will the widow is given *the income* derived from the entire estate, *charged* with the duty of maintaining the daughter. She is also given the *life use* of the household effects and in addition to the income " so much of the principal as she may desire for her own individual need." This is not the case of a simple life estate.

And let us give consideration to the context of the will and its reflection upon the question of the testator's intention as to the amount of the gift of income to the wife.

The will, after the death of the wife, gives all the rest, residue and remainder in trust, to receive the rents, issues and profits, and directs *first*, the payment of all " interest, taxes, assessments, insurance premiums, cost of necessary repairs and other expenses incidental to the proper maintenance and care of the estate, and then to pay the *net income* to the daughter Josephine M. for her natural life.

The will was prepared by an attorney and the words used therein were adopted by the testator. A clear discrimination is made in these two gifts of income. And there is reason for it. The distinction was clearly in the testator's mind. In one case he gave *the income* and in the other the *net income*. It is the opinion of the court that the testator intended to give the *gross income*, the fullest income, to the widow. Income that is not to be diminished by anything to be taken therefrom. And why should not he have so intended? Why give *net* income, with every probability of invasion of the corpus under the authority to use for the widow's needs? The widow was naturally expected to live the shortest number of years — the young daughter the longest. The widow's care was the instrument of solicitation. The circumstances surrounding the gift to the widow were different from those attending the gift of the trust estate for the daughter's use. The widow must live, is charged with the duty of taking care of the daughter, running the home, and the testator went so far as to say to his wife: You may encroach upon the corpus of my estate for your needs. She was given all the estate.

All the taxes must be dealt with on this accounting as chargeable to the general estate — the capital account. If the widow paid taxes, reimbursement must be made. This is true not alone as to taxes but to repairs and insurance premiums paid by her. It is unnecessary to consider the principle that was applied in *Matter of Martens* (16 Misc. 245) to vacant real estate having a prospective value.

Objection 12 relates to items expended for repairs to the real estate. The same reasoning heretofore stated with reference to taxes applies to the items of repairs. They must be charged to capital account and not paid out of income to the widow.

The account is made up on the theory of giving to the widow a proportionate share of an increase in the value of the vacant real estate, still unsold, pursuant to the principle of equitable conversion, and to the ruling in *Furniss* v. *Cruikshank* (230 N. Y. 495) and *Matter of Schuster* (123 Misc. 314, 316). (See *Matter of Fleet*, 117 Misc. 273, 275.) It is my opinion the principle expressed in these cases does not apply to the instant case, and, consequently,

Surrogate's Court, Westchester County, January, 1927. [Vol. 128

the account with respect to this item must be changed to meet these views.

A further amended account of proceedings should be filed by the executors to conform to this opinion, and upon such account being filed, decree may be entered in accordance herewith.