In the Matter of the Estate of CLARENCE B. STEVENS, Deceased.

Surrogate's Court, Westchester County, October 24, 1933.

*Edward P. Barrett* [*Harrison P. Slosson* of counsel], for the administrator with the will annexed.

*Clayton Ryder,* for the executors and legatees of Selena Stevens, deceased.

SLATER, S. In this construction proceeding, the facts are as follows: Clarence B. Stevens died June 18, 1919, leaving a will in which he appointed his widow, Selena Stevens, executrix. The will was admitted to probate on August 8, 1919.

By the second paragraph of the will the decedent made the following devise and bequest: " I give, devise and bequeath all my estate both real and personal, of every kind and nature, and wheresoever situate that I may own at my decease, to my wife Selena Stevens, with full power to sell and convey all or any part of said estate, and to give valid deeds therefor, and to apply the proceeds from such sales for her own use and maintenance during her natural life, and at her death whatever remains of said estate, I give, devise and bequeath to the Methodist Episcopal Church of Vista, in the Town of Lewisboro, New York."

The decedent left him surviving no children and no issue of children. He was sixty-five years of age at the time of his death. He left a brother and nephews and nieces.

The widow, Selena Stevens, administered the estate until her death on January 27, 1933, at the age of seventy-five years. She left a will probated in this court on March 2, 1933. A brother, a niece, grandnieces, great-grandnieces and the Methodist Episcopal Church of Vista, N. Y., were the legatees under her will.

The decedent left the following real property:

(1) Five and one-quarter acres of land located at Vista, town of Lewisboro, Westchester county, upon which there is a two-story frame dwelling and store.

(2) Fourteen acres of unimproved real estate in the town of Poundridge.

(3) Fourteen acres of unimproved real estate in the town of New Canaan, Conn., adjacent to the last mentioned piece.

(4) Merchandise in store.

The widow sold the five and one-quarter acres of real estate with the store on April 30, 1926, for the sum of $7,250. She received the sum of $3,250 in cash and took back a purchase-money mortgage in the sum of $4,000 *in her own individual name.* The cash, in the amount of $3,250, received on this sale was deposited by the widow *in her own bank account.*

The widow, as the decedent's executrix, sold the fourteen-acre parcel in the town of Poundridge in August, 1928, for the sum of

$4,250, taking back *in her individual name* a purchase-money bond and mortgage for $2,500, which mortgage was paid in August, 1931, and a new mortgage in the sum of $2,500, dated August 4, 1931, was given in lieu of an extension of the original mortgage discharged. The said new mortgage was taken *in her individual name*, and her estate now holds the said bond and mortgage. The balance of the purchase price, the sum of $1,750, was paid in cash and was deposited by the widow in banks and was kept intact by her *as part of the estate of Clarence B. Stevens.*

The widow, as executrix, sold the fourteen-acre parcel of land in the town of New Canaan on August 7, 1928, for $4,250, taking back a mortgage of $2,500, afterward released and a new mortgage substituted which runs to the widow *as executrix.*

The petition discloses that the decedent and his wife had lived together at Vista for many years and, after his death, the widow continued to live there for a period of fourteen years until her death.

The Methodist Episcopal Church of Vista, town of Lewisboro, N. Y., contends that it is entitled, pursuant to the terms of the will of Clarence B. Stevens, to all the property, real and personal, that was not *actually used* by the widow for her use and maintenance, whether the same stands in the name of the estate or whether it was reduced to the widow's possession. This brings up the direct legal proposition of whether under the terms of this will the widow can sell real estate, place the funds in her own bank account and take a purchase-money mortgage for part in her own individual name and upon her death the ownership be in her estate.

One of the earlier cases affecting the question is *Leggett* v. *Firth* (132 N. Y. 7). On facts less compelling and without a direct power of sale, the court held the widow took a life estate, with a power of sale to be exercised during her life for her own benefit, and the children took a remainder in fee, subject to the exercise of the power.

In *Seaward* v. *Davis* (198 N. Y. 415) an absolute power of disposition was found, without an express power of sale, *with remainder over of such part as she might not dispose of*, to the remaindermen named in the will.

The instant case is far removed from the facts and decision in *Matter of Skinner* (81 App. Div. 449; affd., 180 N. Y. 515). In the *Skinner* case there was no express authority to dispose of the estate. (See *Matter of Nugent*, 142 Misc. 594, and cases cited; *Matter of Foels*, 145 id. 393; *Matter of Limburger*, 128 id. 577; *Matter of Smith*, 126 id. 296; *Matter of Hart*, 122 id. 124.)

Under the words of the instant will, the widow could not dispose

of the estate by her own will. (*Matter of Raynor*, 254 N. Y. 516; *Vincent* v. *Rix*, 248 id. 76.)

In *Rezzemini* v. *Brooks* (236 N. Y. 184, 191) the court said where the will provides that the principal " or so much thereof as may then remain " shall be paid to the remaindermen, it indicates that the beneficiary is to be supported and maintained, *first*, from the income, and *second*, from the principal in such amount as might be necessary in addition to income to properly support and maintain the life beneficiary. It does not entitle the remaindermen to any estate in the property except in the event that, upon the death of the life beneficiary, a part of the principal then remains *undisposed of*.

In *Matter of Davies* (242 N. Y. 196, 199) the property was devised to the husband for life, giving him full control " to expend the principal, income, interest, rent and profits as he may see fit," and upon his death such part of the principal, income, interest, rent and profits as might be unexpended to be paid to the decedent's son. The court held that the will gave the husband the right to expend the principal of the property bequeathed to him for life. If he saw fit to expend it, he could do so only by " disposing " of it, and such disposition would, of course, be for his own benefit. Since the power to so dispose of the property was subject to no trust or condition, it was clearly " absolute " within the statutory definition.

In *Matter of Fitzpatrick* (252 N. Y. 121, 124) the life tenant received full power to use all or any part of principal or income of the property. It was held a conveyance made for the purpose of securing a contract for her support for a fixed time if she should live that long, was within the scope of that power. The testatrix had made the life tenant sole judge of what property she should use and how she should use it.

The instant case is very similar to the facts in *Matter of Nugent* (*supra*), where the estate was given to the wife absolutely for her own purposes, with power to sell any real estate, and directed that, after the death of the wife, the property then left was to go to the two sons. The will was construed as giving the widow a life estate with power to invade the principal and what was left belonged to the sons, the remainder to the sons being contingent; only so much of decedent's property as *shall not have been disposed of* by the widow during her lifetime to pass to the remaindermen.

In the instant case the widow is given full power to sell; to give valid deeds and apply the proceeds for her own use and maintenance for life. She has the right to exercise such authority to the extent to which it is conferred upon her and she may dispose

of the entire estate and defeat any expectant interest therein. The words " her own use and maintenance " mean something more than to receive and dispose of income. The word " use " was intended to mean " take over." How much of the estate she was to take over the husband left to the judgment of his own wife without control. Her conscience and her needs solved that problem. The language of the will is plain and not ambiguous. Her judgment controlled. The decision was left to her. She was the primary object of his bounty and probably she had much to do with the accumulation of his property. He intended her to exercise her own personal judgment and not the judgment of some other person or court. She had been given the widest latitude. Being clothed with such powers, she had the right to act and did act. There is no question of her good faith. For twelve years there was a carrying charge — taxes — on the unimproved land. I fail to find that the estate produced any income for these years. The first sale was in 1926, seven years after the decedent's death. The right of the residuary legatee, the church, is entirely subordinate to the authority bestowed upon his wife. (*Matter of Briggs*, 101 Misc. 191; modfd., 180 App. Div. 752; modfd. and affd., 223 N. Y. 677.)

The fact that the widow died before she actually consumed all the money and the mortgages which she took unto herself for her use and maintenance makes no difference. The estate, because of the right and power granted by the will, lost such assets when the widow took them into her possession.

I conclude that the second paragraph of the will should be construed as giving the widow the right to invade the estate, with only her conscience as a check upon the possibility of the depletion of the estate and her right thereto limited only by her sole judgment as to the necessity, for her own use and maintenance during her life. I hold that so much of the estate as she reduced to her own possession by placing the results of sales of real estate in banks or in mortgages in her own name belonged to her. One of the mortgages resulting from the sale of real property was taken in her name as executrix. Such mortgage belongs to the husband's estate. On such facts as found herein, the widow is not called upon to decide her needs from day to day, week to week, or year to year. She lived fourteen years after the death of her husband. She had the possibility of living many years in the quietude of the hamlet of Vista and, in the exercise of her own judgment, she had the right to look ahead, providing for her own use and maintenance out of her husband's estate. And, when once she did that by reducing any part of the estate to her own name, such part belonged to her estate upon her death.

Consequently, I hold that the legatee church is entitled to receive only the assets of the husband's estate which were in the name of the estate at the date of the widow's death. In my judgment, this is supported in *Rezzemini* v. *Brooks* (*supra*), where the court speaks of the principal that *remains undisposed of*.

The decedent's estate at death was of the total value of $16,500, and of this amount the widow reduced to her own possession $11,500, leaving a balance of $5,000 in the estate. As this amount is far less than one-half of the decedent's estate at death, section 17 of the Decedent Estate Law has not been violated and the corporate beneficiary may take such property remaining in the estate of Clarence B. Stevens.