John M. Keane, S.
This construction proceeding has been transferred by the Supreme Court pursuant to SCPA 501 to the Surrogate’s Court.
Nature abhors a vacuum, according to the high school physics books of a generation ago, and since no will exists in a vacuum, the facts involved here are significant. The decedent, Algie R. Kahn, being about 57 years old, died August 26, 1911. Her will, which had been executed on November 10, 1909, was admitted to probate in this court on October 2, 1911. She left surviving a daughter, Nellie M. Reynolds, then 36 years of age, and a grandson, Charles L. Reynolds, then 11 years of age. Although her will relates to both real and personal property, the transfer *513 tax proceeding .shows that she died possessed of two parcels of real property and no personal property.
The paragraphs of the will relevant to this proceeding are as follows:
“ third. The balance of my property, real and personal, to my daughter, Nellie M. Reynolds, to use the same for her comfortable support and maintenance for and during the term of her natural life.
‘ ‘ fourth. After the death of my said daughter the balance of my property, then remaining, is to go to the issue of said Nellie M. Reynolds, if any survive her, but, in case .she die without issue, the same is to be equally divided between my then surviving brothers and sisters, with this exception, that the share of my sister, Mary Gilmore, is to go to her son, Edward, if living. But, in case all my brothers and sisters are dead, leaving issue, then the share of such deceased brother or sister is to go to their issue.”
In 1962 the State of New York appropriated for highway purposes one of the parcels of real property, a two-family house occupied by Nellie M. Reynolds on the lower floor and rented on the second floor. The nature of the devise under the will of the decedent was such that a proceeding was necessary in Supreme Court to secure approval of an offer made by the State and also to determine the disposition of the proceeds of the appropriation.
Accordingly,- in 1963, such a proceeding was begun. The final order, made on March 2,1964, determined that the amount offered by the State was fair and reasonable. More importantly, the order directed that the sum of $19,513.65 remaining after payment of the expenses be deposited in interest accounts of two banks and that Nellie M. Reynolds as life tenant receive the income from said accounts semiannually, but that she had no right to withdraw any of the principal. The order then provided that, “ upon the death of the said life tenant, Nellie M. Reynolds, each of the aforesaid banks shall pay over and distribute to the Executor or Administrator of the life tenant the accrued interest on said savings remaining in the respective accounts and shall then pay over and distribute the principal of said accounts, pursuant to the directions in the Last Will and Testament of Algie R. Kahn, deceased, to and among the remaindermen or other persons who may then be entitled thereto, upon order of this Court or of a Court of competent jurisdiction ”.
The money still remains in the two banks as directed by the Supreme Court.
*514 The petition in the proceeding in Supreme Court also requested relief that, “ On the further order of this Court, upon the death of Nellie M. Reynolds, the trust or savings account balance, is to be distributed per capita to the surviving issue of Nellie M. Reynolds, but if Nellie M. Reynolds dies without issue surviving her, then the trust corpus or savings account balance is to be distributed among the surviving issue of the deceased brothers and sisters of Algie R. Kahn.” However, the order as finally made on March 2, 1964 did not make a determination of this quoted prayer for relief.
Nellie M. Reynolds, a widow since 1946, suffered a stroke in July, 1968 and after being first in a hospital, has subsequently been confined to a convalescent home. She is now 93 years of age and her son, Charles L. Reynolds, is approximately 69 years of age. Additional issue are two granddaughters (children of Charles L. Reynolds) and four great-grandchildren. Thus, at the present time, there are seven living persons who are the issue of Nellie M. Reynolds.
This proceeding was initiated by Charles L. Reynolds seeking a construction of the will of his grandmother, Algie R. Kahn, to the effect that his mother, Nellie M. Reynolds, the life tenant, has, for all practical purposes, an absolute fee interest in the one parcel of real property remaining, and in the moneys presently in the two banks representing the amount paid for the appropriation of the other parcel. In addition, he has requested the court to make a determination concerning the ultimate remaindermen under the terms of his grandmother’s will.
Specifically he seeks a determination that the fee has vested in Nellie M. Reynolds because she received more than a life tenancy under the will. The guardian ad litem for the four infant respondents, who are also issue of Nellie M. Reynolds, opposes this request and contends that only a life estate without power to invade was given to Nellie M. Reynolds under the will of her mother, Algie R. Kahn. The guardian ad litem further contends that if the court entertains the request to make a determination as to the ultimate remaindermen, the disposition should be per capita and not per stirpes, inasmuch as the decedent died in 1911.
Decedent’s will was very short, covering less than a single page. Except for directions to purchase a modest monument and a bequest of $100 to a grandnephew, it consisted only of the paragraphs already set forth. It was prepared by a lawyer.
On occasion the court must indulge in a legal fiction when seeking the intent of a testator where a long and complex will *515 has been prepared by a lawyer; yet the courts generally have held language in wills prepared by lawyers to be less susceptible of variant meanings because the lawyer is using the words of his profession. Contrariwise, a will drawn by one not a lawyer provides an opportunity for a court to apply less stringent guidelines in interpretation. Although counsel for the petitioner argues that the draftsman could have been more explicit and avoided such a problem as presently exists, the court must look upon this instrument as one prepared by a practicing lawyer.
The language of paragraph “ third ” gives no more than a life estate to Nellie M. Reynolds. The argument of the petitioner must succeed or fail, depending on the interpretation of the two words ‘ ‘ then remaining ’ ’ found in paragraph “fourth”. It is the contention of the petitioner that these words have no meaning unless Nellie M. Reynolds receives more than a life estate, in fact, substantially an absolute fee in the real property owned by the decedent.
The situation which existed at the time of Algie R. Kahn’s death with a will granting a life estate is unlike most of the reported cases. With a few exceptions, the reported cases involving interpretation of similar language concern dispositions made by a husband to his wife. Here the disposition was to -a married daughter, still a relatively young woman. The argument of the petitioner speaks repeatedly of an implied right to invade in order to provide a livelihood for Nellie M. Reynolds.
Her situation was not that of a widow. She was married and presumably being supported by her husband. Sixty years ago the use of life estates was much more common than among present day practitioners. The language of this will must be viewed in the time span in which it was created. Unlike a widow, Nellie M. Reynolds was not relegated to these two parcels of real property for her livelihood after her mother’s death. In fact, approximately 37 years elapsed before her own husband died. The court is aware of the present situation in which Nellie M. Reynolds finds herself with substantial medical expenses and a small income as a life tenant. Despite the court’s sympathy for her present position, the determination in this construction proceeding must be confined to the will before the court.
The court wishes to commend both counsel for the petitioner and the guardian ad litem for their extensive and thorough briefs which have been of substantial assistance to the court. *516 As both counsels point out, the reported decisions are in reconcilable conflict.
Although it is impossible to reconcile the number of decisions submitted concerning the problem before the court, some must be examined for the court to reach an informed decision. The earliest case cited by the petitioner is Crozier v. Bray (120 N. Y. 366 [1890]). This will and codicil provided primarily for the wife of the testator. However, she had predeceased him and the question before the court concerned the effect of the language as to the interests passing to the remaindermen. The will and codicil contained much more detailed and specific language than is found in the will of Algie R. Kahn. Based on all of those facts, the court found that the testator intended to give a life estate with power to sell and the remainder over after the death of the life tenant to the one named in the codicil. The facts involved and the particular language of the case distinguish it from the one before the court.
The second case, Leggett v. Firth (132 N. Y. 7 [1892]) by the same Judge who wrote Crosier v. Bray (supra), also involved a devise to a wife. The particular language was (p. 10): “ I also give, devise and bequeath to my wife Ellisheba all the rest and residue of my real estate, but, on her decease, the remainder thereof, if any, I give and devise to my said children, or their heirs, respectively, to be divided in equal shares between them.” The court reasoned that when all the language was considered the only logical conclusion gave the widow a life estate with a power of sale to be exercised during her life for her own benefit, with a remainder in fee over to the children subject to the exercise of the power. The language in this decision is somewhat closer to that appearing in the will before the court.
Other decisions supporting the position of the petitioner were Matter of Luce (128 Misc. 355 [1926]); Matter of Streebel (151 Misc. 219 [1934], affd. 242 App. Div. 879 [1934]); Matter of Schleiermacher (14 Misc 2d 461 [1958]) and, finally, Matter of White (43 Misc 2d 414 [1964]), where Leggett v. Firth (supra) was cited and followed.
The guardian ad litem for the infant respondents, in contending that Nellie L. Reynolds receives only a life estate and no greater interest, relies on Matter of Skinner (81 App. Div. 449 [1903], affd. 180 N. Y. 515 [1904] on prevailing opinion below). The particular language of the will gave certain personal property to decedent’s widow (p. 450), “ during her natural life, and on her decease, I give and bequeath to my *517 said children * * * all the rest and residue thereof then remaining, share and share alike.” This language is remarkably similar to the language found in the will of Algie ft. Kahn. Indicating the difficulty of the question, the Appellate Division divided 3 to 2 in its decision, and in the Court of Appeals there were 2 dissents. The court, in reaching its conclusion, cited two older cases, Owens v. Owens (64 App. Div. 212 [1901]) and Matter of Runcie (36 Misc. 607 [1901]).
Later, in Matter of Eckam (237 App. Div. 463 [1933]) decedent gave a life estate to his widow. The following language was used: ‘ ‘ After the death of my wife if she so remained my widow, I direct that whatever there remains in real or personal property shall be divided to my four children or their heirs as follows: * * The court specifically followed Matter of Skinner (supra) in finding that the wife took only a life estate and no greater interest.
In the same year another decision, Matter of Taylor (149 Misc. 705, 706 [1933]), concerned a will providing for decedent’s wife, concluding with the language: ‘1 Upon her death any residue to be divided, share and share alike between Harry Junior Taylor my beloved son and Eileen L. Hurley my beloved daughter.” Involved was the interpretation of the words “ any residue ”. The court again cited Matter of Skinner (supra), and determined that its rationale should prevail in this particular case. The court pointed out (p. 707) that a life estate “ may not be enlarged except by unambiguous language ”.
One further case was Matter of Dawley (150 Misc. 861 [1934]) where the language again was similar to that of the will of Algie R Kahn. The will read (p. 862): “ At the death of my said son and his wife I direct that any property then remaining shall be equally divided among their children then living, or being dead with issue living, then such issue shall receive the dead childs share.” The court comments, as have other Judges, that such language presents a (p. 863) “ border case”. The court determined (p. 863) that there was only a life estate “ without authority to invade the principal or corpus.” The court considered the cases which have been previously mentioned herein along with some others. In conclusion the court held that the language was not sufficiently definite to enlarge the life estate into anything greater.
This court experiences the same difficulty mentioned in some other decisions quoted above in reaching a determination on the language under consideration.
After carefully reviewing the decisions mentioned above, this court does not perceive that ‘ ‘ very faint glimpse of a differ *518 ent intention in the context” (2 Jarman, Wills [5th Amer. ed. 1881], p. 195) to support a determination that Nellie M. Reynolds received more than a life estate under the will of her mother, Algie R. Kahn. This determination renders academic other arguments concerning the extent and breadth of the right to invade made by the petitioner.
It is clear at the present time that the “ issue ” of Nellie M. Reynolds consists of seven people; a son, two grandchildren and four great-grandchildren. The petitioner has requested that the court make a determination concerning the ultimate remaindermen among these at the present time, principally whether there should be a per stirpes distribution or a per capita distribution. The court realizes that four of the remaindermen are infants. There is some indication that unless a determination is made concerning the ultimate disposition, difficulty could arise in selling the remaining parcel of property either in the lifetime or Nellie M. Reynolds or subsequent to her death.
It would seem to this court that on a sale during the lifetime of Nellie M. Reynolds, SCPA 315 would control and the only necessary parties would be her present issue. In the event of a sale after the death of Nellie M. Reynolds, difficulties can arise only if there is a claim of a per stirpes distribution rather than a per capita distribution. Since the disposition after the death of Nelle M. Reynolds might be made amicably among the parties, the court at this time declines to make a determination concerning those entitled to the remainder. At the present time such a determination is premature.