In the Matter of the Estate of THOMAS R. A. HALL, Deceased.

Surrogate's Court, New York County, April 6, 1926.

**Wills — construction — will shows intention of testator to have bene-
ficiaries receive entire income — trustees have no authority to set aside
sum annually out of income as principal for purpose of amortizing
certain leaseholds belonging to estate.**

The objections of two life tenants to the setting aside of a certain sum annually
out of income as principal, for the purpose of amortizing the value of two certain
leaseholds belonging to the estate, should be sustained, since the intention of the
testator to have the beneficiaries named receive all of the income is indicated
by provisions in the will that the executors are directed to pay over the *net
income* to the beneficiaries; that in providing for distribution upon the death of
life tenants, reference is made to the share which was directed to be held in trust
for such child, during his or her lifetime, *or so much thereof as may remain;* and
that the executors may use and expend any part of the principal for the benefit
of the respective life beneficiaries.

There is not a single expression in the will indicating a purpose to provide by
amortization for the diminishing value of the leaseholds.

Although the broadest and fullest discretion is given to the executors and trustees,
this discretion may not be exercised to the point of frustrating the manifest
intention of the testator.

PROCEEDING for an accounting involving the construction of
the trust provisions of a will.

*Thomas C. Ennever,* for the trustees.

*Franklin P. Trautmann,* for Emily D. Stephens.

*John D. Lindsay,* for Lillian H. Abbett.

*Nims & Verdi,* for Josephine V. Hall.

O'BRIEN, S.    In this accounting proceeding two of the life tenants,
Lillian Hall Abbott and Josephine V. Hall, have filed objections
to the setting aside of $20,000 annually and beginning with the
year which ended on May 1, 1925, out of income as principal for
the purpose of amortizing the value of two certain leaseholds.   By
the 7th paragraph of his will testator gave his residuary estate
in trust to his three executors (his two brothers, William H. Hall
who died February 28, 1912, and Charles E. Hall, and his son
William W. Hall) and their successors in the following language:
" In special trust and confidence, however, that they will take
possession, manage and control the same, and invest and reinvest
the same from time to time as they may deem best for the interest
of said estate, and that they will hold and manage the same, and

pay over the net income, as often as may be convenient, to the beneficiaries as follows: In case my wife survives me they shall hold one-third of said estate for the benefit of my said wife for and during her natural life; and they shall hold and manage the remaining two-thirds of my estate or, in case my wife shall not survive me, then the whole of said estate, in trust for the benefit of my three children, William W. Hall, Lillian Hall Abbott and Josephine V. Hall, in equal shares and proportions for and during their respective lives, and that in case my wife survives me, then after her death, they hold the one-third in which she is interested for life, for the benefit of my said three children in equal parts or shares.   *   *   * "

Said 7th paragraph concludes as follows: " These provisions are subject to the right on the part of my executors to advance any part or parts of the principal sum to any of the beneficiaries whenever and as often as they deem proper to do so, and I give them full power and discretion to make such advances to the several beneficiaries out of the principal of the shares set apart for their benefit as hereinbefore provided."

Other paragraphs which are important in the matter now under consideration read as follows:

" *Ninth.* After the death of any of my said children, in case the child so dying shall leave issue, such issue shall take the share which was directed to be held in trust for such child during his or her lifetime, *or so much thereof as may remain,* such issue to take in equal shares *per stirpes* but not *per capita.*

" *Tenth.* In case such child shall leave no issue, then the share of the child so dying, *or so much thereof as shall then remain* shall be paid over to his or her surviving brothers and sisters, and the issue of any deceased brother or sister — the issue of any deceased child to take the share their parent would have taken had said parent survived."

" *Twelfth.* I hereby nominate and appoint my son, William W. Hall, and my brothers, William H. Hall and Charles E. Hall, the executors and trustees of this my last will and testament, and I authorize and empower them, or such of them as shall have qualified, and the survivors and survivor of them, and their successors, to sell and convey any part or parts, or all of the real estate, leasehold property, bonds, mortgages and other securities or property of which I may die seized, and to carry out any contract for the sale of any real estate or leasehold which I may have made, and to make good and sufficient deed or deeds thereof, and such sales may be made either at public or private sale and upon such terms as they shall deem proper.

" And I also authorize them, or the survivors or survivor of

them, to borrow money, and to make any bond or bonds for the repayment of any moneys borrowed or to be borrowed, and to make any mortgage or mortgages upon real estate, and mortgage or mortgages upon leasehold property, or any part thereof, for such amounts, and in such forms as they shall deem proper, and upon such terms as they may deem fit from time to time. Also to build upon and to make any alterations or improvements upon real estate or upon leasehold property belonging to me, or to my estate; also to make leases of real estate or leasehold property, or any part thereof, from time to time, for any term they may deem best; and to collect the rents and other income thereof, and in all other respects to manage and control the same; also to make mortgages upon personal property, and to do and perform, at such time or times as they may deem expedient, any and all acts that I could possibly do if living, and any and all acts in connection with the assets of the estate; and to execute any and all instruments in connection with the property of which I may die seized or possessed, as fully and completely as if the same belonged to said executors personally, and that they may invest the said estate, or any part or parts thereof, in such manner as they may deem proper, without any restrictions whatsoever, in the course of their management of the property and the several trust estates; and that they may hold said estate intact, if they deem it wise so to do, during the longest period that the law will permit, and that they make such distribution of the principal among the life beneficiaries named in this will as they may see fit out of their respective shares invested for their benefit respectively and they may use and expend any part of the principal of said share for the benefit of the respective life beneficiaries it being my intent that the said executors shall have absolute discretion in the matter, and in making these provisions for the management of my estate by my executors I do so because I have full confidence that they are capable of doing it better than I can specifically direct, and I expressly declare that they shall not be liable for any mistakes or errors of judgment; and I direct that no bond or other security be required of them or any of them."

When he made his will the testator was the owner of the leaseholds of Nos. 636 and 634 Fifth avenue, having acquired both properties, together with the leasehold of No. 632 (which had meanwhile passed to his son William W. Hall, one of the present trustees) from the trustees of Columbia College prior to May 1, 1907, with a view to demolishing the old-fashioned dwelling houses which then occupied the several parcels and erecting on their sites modern buildings more suitable to the then changing character of the neighborhood, and capable of producing rents corresponding

to the then rapidly increasing value of the land. The lease of No. 636 is for a term of thirty-one years from that date, at a yearly ground rent of $20,000, and that of No. 634 is for a term of twenty-six years from May 1, 1912, at a yearly ground rent of $19,000 plus (as to both leases) all taxes, assessments, water rates and other charges. The terms of both leases expire May 1, 1938, when the lessors are required either to pay the lessee the fair value of the buildings then standing on the premises, if suitable for the location, or, at the option of the lessors, to grant a new lease for twenty-one years at a reasonable ground rent, with a like covenant for payment or renewal at the expiration of the second term. The lease of No. 634 was made subject to a then outstanding lease at a yearly ground rent of $12,500 in similar form which ran until May 1, 1912, all the obligations of which were assumed by the testator. At the time of his death, February 10, 1910, which was about four months after he made his will, the testator had demolished the old building at No. 636 Fifth avenue, and erected on its site at a cost of $543,000 the present twelve-story store and apartment building, which was then substantially completed and partially rented. The value of this leasehold at the time of the testator's death was fixed by the transfer tax order at $375,000. At the time of his death the testator was negotiating for the taking over of the outstanding lease of No. 634 Fifth avenue with a view to the improvement of that plot by the erection of a modern store and loft building. After his death these negotiations were brought to a successful conclusion by the executors, who entered into possession of the premises, demolished the old dwelling house and erected on its site the new and present building which was completed and ready for occupancy by October 1, 1911, seven months before the beginning of the term covered by the lease from the college trustees to the testator. The cost of this improvement was $151,331 and exhausted all except about $50,000 of the available funds of the estate. In their account the executors charged this sum against principal, and adding it to the value fixed by the transfer tax order estimated the value of the leasehold, as so increased, at $251,331.15. They were charged accordingly by the decree of January 31, 1913, and in all their annual accounts as trustees, except the present one, they have estimated its value at that figure in the way heretofore stated. The trustees have collected the rents from the leasehold properties, having rented by separate leases the stores and the apartments and lofts in the buildings. During the earlier years the amount of net rentals was comparatively small. Under authority conferred by the Supreme Court in proceedings taken for that purpose, the

16

trustees rented the leasehold premises at No. 636 Fifth avenue for a net yearly rental of $67,500, the lease covering the whole building. Out of that amount, however, the trustees were required to pay the ground rent which was $20,000 per annum, leaving a net income from that building of $47,500. That lease will expire May 1, 1938, which is the same date upon which the lease from Columbia College heretofore mentioned will expire. Later, to wit, in 1921, by similar order of the Supreme Court, they were authorized to and did rent the whole building No. 634 Fifth avenue for a term ending May 1, 1938, at a net annual rental of $90,000, out of which they were required to pay, however, ground rent amounting to $19,000 per annum, thus netting the estate $71,000 per annum. The net income from the two buildings amounts to $118,500 per annum. The trustees collected the net income of these two leaseholds up to May 1, 1924, and paid out such income one-third to the widow of the testator and two-thirds to the three children, life beneficiaries of the testator. They accounted annually for such distribution. At no time prior to this accounting was the question raised as to whether the net income of the leaseholds was properly paid to the life beneficiaries. This is the first accounting of a full year since the death of the testator's widow and the executors now have set aside out of the income of the leaseholds for the year ending May 1, 1925, the sum of $20,000 as principal for the purpose of amortization. At no time was the question heretofore raised that any part of the income of the leaseholds was principal and should be set aside as such, nor has the court passed upon that question upon any former accountings, which were had regularly annually since the death of the testator in 1910. Objections have been filed to the setting apart of this sum of $20,000 on the ground that the propriety of the acts of the executors upon the former accountings are *res adjudicata*, and further that the assent and acquiescence with full knowledge of the remaindermen in the construction of the will which has heretofore been accepted by all of the parties and approved by the court and their assent and acquiescence with full knowledge of all the acts of the trustees based upon such construction estops them from asserting a different construction now, and that it is now too late to set apart any sum for the purpose of amortization. Besides the objectants no one has appeared in this proceeding except Emily D. Stevens, one of the remaindermen, who supports the position of the trustees. The remaindermen are Emily D. Stevens, Cameron P. Hall and William W. Hall, Jr., *children* of William W. Hall, life tenant; Leon Abbott, Jr., *and* Sheldon Abbott, children of Lillian H. Abbott, life tenant.

I hold that the objections to the setting apart of said amount out

of income as principal to amortize the value of said leaseholds are well taken and that no such deduction should be made from the income; but I prefer to base the decision upon firmer ground than either the doctrine of *res adjudicata* or that of estoppel as urged by the objectants.    The basis for my conclusion is found in the intention of testator manifested in several clear and unmistakable expressions in his will.    Were there not embodied in the will these manifestations of the mind of testator, the general rule, of necessity, would hold because of the character of the properties involved. (*Matter of Golding*, N. Y. L. J. June 20, 1924.)    As pointed out in *Frankel* v. *Farmers' Loan & Trust Co.* (152 App. Div. 58; affd., 209 N. Y. 553):   " It is no doubt a general rule that where trustees or executors find a portion of the estate invested in what are termed ' wasting ' securities, they should pay to the life tenant only so much of the income as represents a fair return upon the capital value, accumulating and retaining the residue for the benefit of the remaindermen.    (*Howe* v. *Earl of Dartmouth*, 7 Ves. 137;  *Cairns* v. *Chaubert*, 9 Paige, 160;  *Kinmonth* v. *Brigham*, 5 Allen [Mass.], 270.)    *This rule is not rigid, however, and yields readily when it can be seen from the will itself, read in the light of the surrounding circumstances, that the testator entertained a different intention* (2 Jarman Wills [6th ed.], 1245; Perry Trusts [6th ed.], § 450); for as was observed by the latter author:  ' If the testator conferred upon the remaindermen only the possible chance of taking what might be left by the tenant for life unexhausted, the remainderman will receive all that was intended for him and has no right to complaint.'    In the present case it is worthy of note that the only living persons named in the will as remaindermen, to wit, the testator's brother and his wife and daughter, although joined in the action take no part in the controversy and do not contend for the position assumed by the defendant trust company." The intention of the testator to have the beneficiaries named receive all of the income is indicated in various places:    (1) In paragraph " seventh " the executors are directed to pay over the *net income* as often as may be convenient to the beneficiaries. (2) In said paragraph authority is given to the executors to " advance any part or parts of the principal sum to any of the beneficiaries whenever and as often as they deem proper so to do; and I give them full power and discretion to make such advances to the several beneficiaries out of the principal of the shares set apart for their benefit as hereinbefore provided."    (3) In paragraph " ninth " in providing for distribution upon the death of the life tenants reference is made to " the share which was directed to be held in trust for such child during his or her lifetime, *or so much*

*thereof as may remain.*" (4) This expression " or so much thereof as may remain" is *again used.* (5) In paragraph " twelfth " it is further provided " and that they make such distribution of the principal among the life beneficiaries named in this will as they may see fit out of their respective shares invested for their benefit respectively, and they may use and expend any part of the principal of said share for the benefit of the respective life beneficiaries  *  *  *."

These provisions clearly show a dominant idea in testator's mind to make certain that the life tenants receive the fullest measure of income out of his estate and, in the judgment of the trustees, parts of the principal of their shares, the language permitting, it might fairly be argued, even the advancing to them of the entire principals of their shares. On the other hand, there is not a single expression in the will that indicates a semblance of a purpose to provide by amortization for the diminishing value of the leaseholds. The situation presented here in its essentials comes within the ruling made in the *Frankel Case (supra).* The trustees argue that their action is within the judgment and discretion authorized by the will. While it must be conceded that the broadest and fullest discretion is given to the executors and trustees by the will, this discretion may not be exercised to the point of frustrating the manifest intention of testator.

Submit decree construing will and settling the account accordingly.