## In the Matter of the Estate of NEWBOLD L. R. EDGAR, Deceased.

Surrogate's Court, Orange County, October 29, 1935.

*Harry Civiletti*, for the objectant.

*Alexander & Keenan*, for the trustees.

*D. Clinton Dominick*, special guardian.

TAYLOR, S. After certain bequests not here important the testator devised and bequeathed all his real and personal property to his trustees in trust for his widow for life with remainder over. The will directs the trustees to " take possession of and manage all such real estate and personal property; to collect and receive the rents, income and profits thereof, and after paying all expenses, taxes and charges thereupon to apply the net rents, income and profits of the same to the use of my wife * * * during her life," and in the same paragraph it is directed that the first payment be made to the widow within three months after the testator's death and that the payments be made quarterly thereafter. The executors and trustees were given power to sell, mortgage or lease the real property; to invest the proceeds of any property sold in other real estate or other securities and the will relieves the repre-

sentatives from the obligation to invest in legal securities. The executors and trustees were authorized " to make such improvements, additions and alterations to my real estate as they may from time to time deem proper."

At the time of his death the testator owned an undivided one-half interest in four New York city properties, two of which have since been sold. The executors and trustees have acquired the outstanding half interest in the two retained.

The trustees have been setting aside out of income a reserve for depreciation for the years 1925 to 1934, inclusive, making a total of $7,050. It has been stipulated that if it were proper for the trustees to set up this depreciation sinking fund, the percentage of value and the amount are reasonable. .

Of course, if it does not contravene well-established rules of law, it is elementary that the testator's intention, as gathered from his will and surrounding circumstances, is to control, and that if such intention may be readily and fairly gleaned from the will itself there is no need to resort to canons of construction. (*Farmers' Loan & Trust Co.* v. *Callan,* 246 N. Y. 481, 487; *McLouth* v. *Hunt,* 154 id. 179, 189.)

In this case the testator gave to his trustees practically unlimited authority in the management of the real property, and in addition to the authority given them as hereinbefore detailed the trustees were authorized to apply any part of the principal of the estate, or money raised by them on mortgage, to make improvements, additions and alterations to the estate real property.

The trust for the benefit of the wife was to be in lieu of dower and this indicates a favorable thought toward her adequate maintenance.

The authority to the trustees to retain the testator's investments, some of which were probably not legal, indicates a primary intention of providing the wife a sufficient income as against providing, so far as one can, for the safety of principal.

The will details quite completely the duties and responsibilities of the trustees which make applicable here this quotation from *Hubbell* v. *Burnet* (46 F. [2d] 446), " the trust instrument contains in itself a complete code of rules concerning what may be done for the maintenance and improvement of the property intended during the trust period. By implication it negatives any idea of the creation of a sinking fund for replacements, and that is what the setting aside of these sums as a charge for depreciation amounts to." This rather complete will evidenced an intent on the part of the testator to provide for his wife as adequate an income as possible, subject, of course, to the obligations imposed by law upon life tenants.

It has been said that it is a poor rule that does not work both ways. If it is the duty of the life tenant, or *cestui que trustent*, to turn over to the remaindermen the trust or other property in equally as good condition and of the same value as it was at the creation of the tenancy or trust, thereby subjecting the life tenant or beneficiary to interim losses, then the holder of the intermediate estate should be entitled to all gains or accretions at the time of the vesting in possession to the remaindermen. Such is not the rule for accretions to the corpus belong to the remainderman. (*Matter of Proctor*, 85 Hun, 572; *Matter of Gerry*, 103 N. Y. 445; *Townsend* v. *United States Trust Co.*, 3 Redf. 220; *Whitney* v. *Phœnix*, 4 id. 180; *Scovel* v. *Roosevelt*, 5 id. 121; *Matter of Cutler*, 23 Misc. 508; *Olcott* v. *Estate of Hoffman, Inc.*, 127 id. 399; affd., 220 App. Div. 713; *Matter of Limburger*, 128 Misc. 577.) And losses are for the same reason chargeable against principal. (*Kaufmann* v. *Commissioner of Internal Revenue*, 44 F. [2d] 144.)

Taking another view of the situation, might it not be reasonably said that if the life tenant is required to set up a depreciation fund, then the life tenant should have the right to make such structural changes or improvements as would not only enhance the value of the property itself, but increase the income therefrom, but this the life tenant may not do, for even the erection of a new and better building would be waste. (*Kidd* v. *Dennison*, 6 Barb. 9, 13; *Agate* v. *Lowenbein*, 57 N. Y. 604, 606; *McDonald* v. *O'Hara*, 117 Misc. 517; *Brokaw* v. *Fairchild*, 135 id. 70; affd., 231 App. Div. 704; affd., 256 N. Y. 670; 2 McAdam Landlord & Tenant, § 299 *et seq.*)

In the *Brokaw* case it was held that the plaintiff was not entitled to judgment authorizing him to demolish a residence left to him for life and to erect an apartment house thereon even though the latter would increase both the principal and the income considerably.

Unless the trustee has the right to sell the real property, the identical property devised immediately upon the probate of the will becomes the property of the remainderman, subject only to postponement in possession until the termination of the life estate, and subject further to the duty of the life tenant to make ordinary repairs, pay taxes, interest, etc. (*Matter of Limburger*, 128 Misc. 577; *Matter of Corbin*, 101 App. Div. 25; *Stevens* v. *Melcher*, 152 N. Y. 551.)

The rule is not changed even if the trustee has the right to sell, because then the identity of the property is transferred to investment in securities for it would be the duty of the trustee to make the property, whatever its form, income producing.

Accretions and losses being unquestionably added or chargeable to principal and the prohibition of the life tenant's making structural

changes, even if the value of the property be thereby increased, show that appreciation or depreciation, as the case may be, are inherent in the very nature of the gift itself.

If in the exercise of ordinary business acumen and foresight, a trustee could foresee depreciation and for that reason ought to sell the property, it might be held in a given case that it was the trustee's duty to sell and thereby the remainderman would be protected.

There is no substantial difference in these rules between a true life tenancy and a trust for life. (*Matter of Shepard,* 136 Misc. 218, 220; *McLouth* v. *Hunt,* 154 N. Y. 179, 189.)

It is not claimed that the property here involved may be classed as " wasting " or " unproductive." (See Restatement, Trusts, §§ 239, 240.) Even in such cases the will may show an intention that the general rule be not followed. (*Matter of Hall,* 127 Misc. 238.)

*Smith* v. *Keteltas* (62 App. Div. 174) has been cited by both the objectant and the trustees. That case holds that it was wise judgment on the part of the trustees to appropriate the sum awarded to them in condemnation proceedings to the erection of modern buildings upon vacant lots and to replace ancient buildings condemned by the board of health as unsafe, for that was the fundamental question presented upon the trial and upon the appeal (p. 177). In that case " it was converting a portion of the corpus of the estate so as to create in another form property which equally constituted a portion of the corpus of the estate " (p. 180). The argument that it was not within the power of the trustee to use any portion of the corpus of the estate to erect new buildings and that the trustee should out of income have expended sufficient to keep the property in a proper tenantable condition was dismissed as impracticable. In the *Smith* case, in this connection, it is interesting to note that the testator died in 1817 and that a trust for his daughter did not terminate until June 20, 1894, a period of seventy-seven years. If we assume that if one and one-half per cent of the value of property set aside yearly is a fair depreciation sinking fund it would be possible for the remainderman to not only have the property itself, but 115.5 per cent of its value in cash in addition thereto.

In *Matter of Chapman* (32 Misc. 187; affd., 59 App. Div. 624) it was held that the beneficiary's income could not be decreased by the executor withholding from the earnings a sum sufficient to provide against losses to the corpus of the estate by the actual or probable depreciation in the value of a freight boat which was the subject of the gift.

This question has been raised in the Federal courts in connection with income tax problems. In *Whitcomb* v. *Blair* (25 F. [2d] 528) it appeared that the trustee made his income tax return for the trust as an entity and deducted for exhaustion and wear and tear of depreciable assets and paid a tax on net income thus computed. Upon the distribution of the income the trustee paid to the beneficiaries this income, plus their respective shares of the amounts deducted in the return of exhaustion, etc. The life tenant did not include the latter in his income tax return, claiming it was a capital distribution. Said the court, " the appellant as life tenant in the trust estate was entitled to receive the full one-ninth of the income therefrom, without regard to exhaustion or wear and tear of the corpus of the estate, and that is what the appellant actually received from the trustee as her distributive share of the income. The trustee was not entitled to withhold any part of her share of the income of the trust estate in order to make good the exhaustion or wear and tear of the capital assets of the estate; nor did the trustee in fact do so. Capital losses in such cases fall upon the reversioners or remaindermen, and not upon the life tenant. Therefore the payment made by the trustee to the appellant was in fact and law the distributive share of the income to which she was entitled as life tenant, and consisted in no part of capital depreciation restored to her."

In *Baltzell* v. *Mitchell* (3 F. [2d] 428; certiorari denied, 268 U. S. 690) the beneficiary of a trust sued to recover an alleged over-payment of income tax, claiming that as securities were sold during the year at a great loss she was entitled to offset that loss against the income actually received, and in answering this contention it was said, " The beneficiary is not interested in the capital of the trust, but only in the income. If there are accretions to the capital, these are not distributable as income, so that the beneficiary may receive any part of them; and if there are capital losses they cannot be made good out of the income. The capital may be depleted by such losses; but the income for that taxable year is not. It may in future years be diminished because of the diminution of the capital."

It is contended that depreciation is a part of the cost of operation (Montgomery's Auditing Theory and Practice [3d ed.], vol. 1, p. 621; *Matter of Jones*, 103 N. Y. 621), but it is submitted that such rule is applicable only in the cases of " going " businesses.

Concluding that the trustees may not set aside a depreciation fund out of income the objections are sustained.

Settle decree on five days' notice or by consent.