**FLETCHER, Plaintiff, v. STANTON et, Defendants.**

Probate Court, Montgomery County.

No. 116298.   Decided February 21, 1952.

162

Scharrer, Scharrer & Hanaghan, Dayton, for plaintiff.
Landis, Ferguson, Bieser & Greer, Dayton, for defendants.

## OPINION

By LOVE, J:

Eva R. Fletcher, principal income beneficiary of a trust created under the will of John Randolph Fletcher, deceased, seeks a declaration of rights and legal relations as between herself and the remaindermen of said trust. Stated broadly, the Court is requested to distinguish between corpus and income of the trust from the time of its inception in 1927 to the present time.

John Randolph Fletcher died on December 5, 1925, and his will was admitted to probate on December 21, 1925. In Item IV the decedent created a trust in his residuary estate and named George W. Chaffin and Homer J. Schmidt as trustees. They were duly appointed on September 30, 1927. Applicable portions of Item IV are hereafter set forth:

"Item IV. All the rest and residue of my estate of whatever kind and character and wherever located, of which I may die possessed or to which I may be entitled, I give. devise and bequeath to George W. Chaffin, and Homer J. Schmidt, in trust however, for the uses and purposes and for the benefit of the persons hereinafter named, to-wit: Said Trustees shall hold, manage, and control said property during the continuance of this trust with power as to real estate to improve, lease, rent, sell and convey the same or any part thereof, in the exercise of their discretion; and as to personal property to hold, control, sell invest and reinvest the same in such manner as they may think best, with full power of converting realty into

personalty and personalty into realty, having the power to mortgage, plegde property and borrow money. **I further authorize and empower said Trustees, in the exercise of their discretion, to carry on any and all business conducted by me at my decease, and to continue the same for such time, as in the judgment of said Trustees, shall be for the best interest of my estate.**

"**During the natural life of my wife, Eva Rasor Fletcher, the net income shall be paid by said Trustees quarterly, by check** as follows:

"To my wife, Eva Rasor Fletcher, Fifty per cent thereof.

"To my daughter, Anna Fletcher Stanton, Twenty-five per cent thereof.

"To my sister, Mrs. Mary Gordon, Thirteen per cent thereof.

"To my sister, Daisy W. Fletcher, of Dayton, Ohio, Twelve per cent thereof." (Emphasis supplied.)

At his death John Randolph Fletcher owned a business known as the Fletcher Manufacturing Company, which was engaged in processing, assembling, and shipping overhead hardware of various kinds for high power transmission lines used principally by utility companies and large industrial plants.

George W. Chaffin died in September, 1930; and the trust continued under Homer J. Schmidt, the surviving trustee, until his death on December 17, 1947. The business had been operated profitably under the trustees selected by the decedent as disclosed by the accounts, most of which have been entered as exhibits in this proceeding. After Mr. Schmidt's death, the business was operated by Lily L. Rasor, sister of Eva R. Fletcher, without any trustee until this Court was made aware of the fact prior to April 5, 1949. This Court considered Lily L. Rasor a de facto trustee inasmuch as she had been employed by the decedent as cashier in 1923 and continued as an employe of the trust until Mr. Schmidt became ill in November, 1944 at which time she took over the complete management of the business. This Court required Miss Rasor to file Mr. Schmidt's final account as well as to account for the period in which she operated and managed the business without a trustee. (See Eighth and Final Account of Homer J. Schmidt, Deceased, filed December 6, 1948, Defendants' Exhibit 8, and Corrected Ninth Account of Lily L. Rasor filed October 11, 1949, Plaintiff's Exhibit F.)

On the 7th day of April, 1949 the Court appointed John F. Stanton, James C. Baggott, and Lily L. Rasor as trustees in conformance to a written opinion of this Court dated April

5, 1949. Miss Rasor, however, could not qualify so that she did not become one of the trustees until December 31, 1949. She has been acting as a trustee since that date and, along with Mr. Stanton, has worked in the business. Mr. Baggott resigned on the 30th day of January, 1951. It is to be noted that the trustees were not made parties to this proceeding and have asserted no position in the matter before the Court except insofar as Mr. John F. Stanton is a party defendant in his individual capacity. Miss Rasor was called as a witness for the plaintiff, and Mr. Baggott as a witness for the defendants.

In order to determine the interest of the defendants, Item IV of the will of John Randolph Fletcher must be further considered.

Mrs. Mary Gordon and Daisy W. Fletcher are now deceased; and in reference to his sisters, the testator provided that, if they should die previous to Eva R. Fletcher:

"* * * said Trustees shall pay their shares as follows:

"Fifty per cent thereof to Eva Rasor Fletcher.

"Twenty-five per cent thereof to Anna Fletcher Stanton.

"Twenty-five per cent thereof to remain in the trust fund."

Item IV then sets forth carefully worded contingencies and finally a termination of the trust after the death of Eva R. Fletcher. At the present time the plaintiff, Eva R. Fletcher, is entitled to the net income of the trust in the amount of sixty-two and one-half per cent (62½%), Defendant Anna F. Stanton is entitled to net income in the amount of thirty-one and one-quarter per cent (31¼%), and six and one-quarter per cent (6¼%) of the net income is being withheld.

Item IV is so worded that, if Anna F. Stanton, decedent's daughter, survives Eva R. Fletcher, his widow, she will receive the entire trust corpus; on the other hand, if she does not survive, the trust corpus will pass to Defendant and Trustee John F. Stanton and Defendant Marvin L. Stanton, Jr., sons of Anna F. Stanton.

The defendants have filed an answer raising three defenses to plaintiff's petition.

From the pleadings, the evidence, and briefs of counsel the Court will state the questions to which the plaintiff seeks a declaration of rights. Pertinent facts, when required, will be set forth as a part of the answer to each question.

I. IS THE CORPUS OF THE TRUST CHARGED WITH A CLAIM OF THE INCOME BENEFICIARIES ARISING AT THE INCEPTION OF THE TRUST?

In propounding the first question plaintiff contends that she has a claim against the remaindermen because the corpus

distributed to the original trustees at the time of the settlement of the final account of the executor was unlawful and incorrect in that debts of the estate were paid out of the income of the business, part of which belonged to the plaintiff.

Defendants contend that this question has been previously adjudicated by an order settling the account of the executor and cannot now be made the subject of a declaratory judgment.

The first and final account of the executor filed November 5, 1927 and approved January 3, 1928 discloses affirmatively that part of the profit from operating the Fletcher Manufacturing Company was used to pay estate obligations in the amount of $8,337.84. On the other hand, the executor set forth that $20,874.86 is profit from the business and $8829.40 is in the principal account. The account shows receipts of $145,070.28 and expenditures of $115,336.97, leaving a balance of $29,703.31 which was turned over to the trustees. The explanation made by the executor is not entirely understandable, and the figures are not correct to the penny; however, all of the beneficiaries, including the plaintiff, signed the following statement:

"The undersigned, being all the legatees and devisees under the Will of said John R. Fletcher, deceased, hereby certify that they have examined the above account, and approve the same."

The trustees, in addition to receipting for $29,703.31, signed the following statement:

"September, 1927.

"Received of Ellis P. Legler, Executor, all personal chattels constituting assets of Fletcher Manufacturing Company, bequeathed to the undersigned under the terms of Will of John R. Fletcher, deceased."

No exceptions were filed to said account.

Assuming that plaintiff is correct that estate obligations were paid out of income, a part of which belonged to plaintiff as of the date of her husband's death, an examination of the will discloses why it was done and why the executor sought the approval of the beneficiaries to his account. In prior items of decedent's will he had given his personal effects, household furniture, and his home to his widow outright. As pointed out before, it was the residuary clause which created the trust. As plaintiff argues, it would be the residuary estate which would be liable for estate obligations, and this Court has no quarrel with the law cited by plaintiff in support of her position. But it was this very residuary estate which

created income for the widow. It is conceivable, therefore, that in order not to sell the business, the profits of it were used to free the estate from the claims of creditors. Otherwise, the corpus would have had to be sold to pay estate obligations. Plaintiff must have known that it was the corpus that produced the income and that, therefore, it had to be freed of estate obligations. What the executor considered business profit was transferred to the trustees and later distributed as income as disclosed by the trustees' first account. No fraud, misrepresentation, or mistake of fact has been alleged or proved by the plaintiff. The account was final. While it did not specifically include and spell out all corpus in detail, it did contain some reference to corpus and; when considered with the estate inventory, there can be no question that the plaintiff knew just exactly what she was approving even though twenty-five years later she claims she did not.

This Court rejects plaintiff's theory, therefore, on three grounds, all of which are so fundamental that no further analysis is required:

1. The order approving the final account of the executor cannot be opened up by a declaratory judgment proceeding. It is a final order and binding upon all those who approved the account. The principle of res judicata applies. See §§10834 (repealed 114 v. 320), 10835 (repealed 114 v. 320), 10842 (repealed 114 v. 320), and 10506-40 GC, (eff. 9-29-45); McAfee v. Phillips, 25 Oh St 374 (1874); Henry v. Doyle, 82 Oh St 113, 91 N. E. 990 (1910); Crawford v. Ziegler, 84 Oh St 224, 95 N. E. 743 (1911); 16 Am. Juris., Declaratory Judgments, Section 29, pages 302, 303.

2. Laches would bar the plaintiff from making any claim against the remaindermen under all the facts and circumstances disclosed at the trial. See 16 O. Jur., Estoppel, Section 37, pages 589, 590.

3. Estoppel would be equally available as a defense. See 16 O. Jur., Estoppel, Section 2, page 552, and Section 34, pages 586, 587. In opposing defendants' defense as to estoppel, counsel for the plaintiff has cited Holmes v. Hrobon et, 61 Abs 113 (1951), particularly the principles of law set forth by the Court in Syllabi 16, 17, and 18. This Court is of the opinion that said case is distinguishable from the case at bar, particularly as it relates to the final account of the executor of the estate of John Randolph Fletcher. It is not necessary for this Court to pass on the question of estoppel as it relates to the trustees' partial accounts in view of this Court's holding under Question II.

While the Court is of the opinion that this proceeding cannot open up the executor's final account so that the widow can claim an interest against the remaindermen, the Court is of the opinion that a declaratory judgment proceeding can be used to clarify the effect of previous judgments and orders of the Court as they relate to successive beneficiaries of a trust and to determine rights and legal relations resulting therefrom where difficult questions have arisen as a result of the administration of the trust. Accordingly the Court is required to declare as nearly as possible what the corpus of the trust is.

II. WHAT IS THE CORPUS OF THE TRUST IN WHICH THE REMAINDERMEN HAVE AN INTEREST AND FROM WHICH THE PLAINTIFF CLAIMS HER RIGHTS AS AN EQUITABLE LIFE BENEFICIARY?

The corpus is the business known as the Fletcher Manufacturing Company. But what constitutes the business is a much more difficult question.

At the outset the Court must inquire as to what the corpus was when the trust was created. The Court is of the opinion that the remaindermen's interest in the corpus began with the trustees' inventory filed and recorded on November 19, 1927, to which no exceptions were taken. This inventory forms the basis for administering the trust res. The total principal as reflected by said inventory is as follows:

Cash on hand and accounts receivable _____$ 9,703.31
Inventory of Merchandise on hand _____16,763.53

Total personality _____$26,466.84
Realty carried at _____ 31,000.00

TOTAL        $57,466.84

Added to this are the personal chattels of the Fletcher Manufacturing Company for which the trustees receipted but which are not disclosed in the inventory or in subsequent accounts. The value of this item is unknown. Thereafter the trustees reported receipts, expenditures, and distributions of profit without any reference to or the segregation of corpus.

Before answering the question it is necessary to digress briefly and comment on the administration of the trust and events which occurred when this Court first discovered that the trust was operating without a trustee.

In an entry filed April 7, 1949 at 3:40 p. m. the Court found:

"(1) The business has been operated profitably.

"(2) To some degree the business as established by John Randolph Fletcher has prospered under its own momentum,

not without the expert assistance however of the trustees and Lily L. Rasor since her connection with the business.

"(3) The business is operating in the past with little thought to the future.

"(4) The business is being operated almost exclusively for the benefit of the income beneficiaries.

"(5) Little consideration has been given to those who may ultimately own the corpus.

"(6) Modern business practices are not being applied to the extent necessary for the proper operation of the trust.

"(7) All of those who seek to be successor trustees are competent and qualified to act in such capacity.

"It appears from the evidence that the interests of the trust and the beneficiaries would be best served by appointing all three applicants, Lily L. Rasor, John F. Stanton, and James C. Baggott.

"The accounts which have been filed in the past are wholly unsatisfactory and the Court cannot obtain detailed information on the operation of the trust from such accounts, to all of which finding of fact, Lily L. Rasor by her counsel excepts." On the same day at 3:41 p. m. another order was journalized, a part of which reads as follows:

"WHEREFORE it is ordered, adjudged and decreed that Lily L. Rasor, John F. Stanton and James C. Baggott, be and are hereby appointed successor trustees under said will of John Randolph Fletcher, deceased, with full power and authority to continue to conduct and operate the business known as Fletcher Manufacturing Company in accordance with the provisions, purposes and powers established by the terms of said will and in conformity with the opinion of the Court rendered herein on April 5, 1949.

"It is further ordered that said Trustees employ a competent accountant or accounting firm to get the affairs of the trust in such condition that the accounting will disclose in detail the operation of said business and to report the results thereof to this Court upon completion of such accounting work."

The main purposes in authorizing the employment of accountants were: (1) to reconstruct as nearly as possible the corpus of the trust and (2) to set up a modern and workable set of books not only to make it possible for the trustees to comply with the law as to separately identifying receipts and disbursements as to principal and income (see §10506-34 GC) but also to assist the trustees in putting into effect modern business practices for the benefit of all beneficiaries of the trust, having in mind that the trustees were required to operate a business which is a hazardous undertaking in and of

itself. Thus it became necessary for the trustees, with the help of their accountants, to reconstruct the corpus in order to have a workable basis for the trustees to operate the business in the future without committing a breach of trust and making them liable to the beneficiaries.

It is at this point that this Court wishes to make clear that the plaintiff has wholly failed to prove that the remaindermen have in any way gained an advantage at the expense of the income beneficiaries against which the corpus should be charged.

The plaintiff has failed to reconstruct the corpus or to distinguish between what is income and what is corpus over the twenty-five year period covered by this proceeding. The only evidence as to what is corpus is that which has been determined as such by the accounting firm employed by the trustees. At the most this can only be an estimate; however, for the most part the estimate or appraisal of that which is now corpus was arrived at in a reasonable and sound way, applying modern and sound accounting principles. Except as hereinafter modified, the Court accepts the corpus to be that which the accountants have found it to be. There is no other evidence or basis upon which this Court can come to any other conclusion.

Plaintiff's Exhibit H and Defendants' Exhibit 1 purport to be statements of inventory of net assets prepared by the firm of accountants employed by the trustees. These instruments disclose a total corpus of $57,440.00. In the Ninth Account of Lily L. Rasor filed August 13, 1949 covering a period from December 17, 1947 to April 7, 1949, during which she operated the trust without a trustee, the same figure is used. (See page two of said account.) However, the following footnote appears:

"Without an examination of the books from date of J. R. Fletcher's death, it is impossible to ascertain whether this is corpus or corpus and income."

Because of this statement, exceptions to the account were filed by one of the remaindermen. Subsequently a Corrected Ninth Account was filed using the same figure as corpus with the following statement:

| "John R. Fletcher Estate | $31.000.00 |
| "Real estate capitalized | 26,440.00 |
| | 57,440.00" |

The beneficiaries approved this account, limiting their approval however to receipts and disbursements and "not to the allocations of assets by accountant." (See Plaintiff's Exhibit F.) The Court has compared this figure and the detailed

breakdown of net assets with the trustees' inventory filed May 27, 1949 and their supplemental inventory filed June 3, 1949, both of which were approved, no exceptions having been filed, and finds the corpus figures as reconstructed by the accountants to be comparable to that with which the new trustees have charged themselves.

Now it is true that, when one compares the breakdown of corpus in existence today with that which was corpus in 1927, there are differences. Some of the assets are held differently, and how this came about would be mere conjecture. There is no proof. Eliminating all attempts of the accountant to depreciate assets and reflecting upon the cash balances in banks and bonds, it may well be that over the years income has crept into the corpus. On the other hand, it is just as logical that doing business in recent years as compared with 1927, the manner of keeping the books and such things as inventory values, merchandise changes, reserves for equipment, and the increased cost of merchandise would give rise to a normal increase in the value of corpus since the inception of the trust. Suffice to say that plaintiff has not shown that the present corpus as reconstructed contains any income to the detriment of the income beneficiaries. The fact remains that the reconstruction discloses a similarity to the corpus which existed at the trust's inception. This similarity strikes the chord of reasonableness. And reasonableness seems to be the only equitable principle left upon which this Court can determine the issues of this case based upon trust law as this Court understands it. It must always be kept in mind that the difficult question of reconstruction of corpus in order to fix the rights of the parties in interest is due in a large measure to the methods employed by the trustees over the years and not by the beneficiaries of the trust except insofar as they have failed to object to the methods employed by the trustees. The finding of the Court, therefore, that the corpus is as the accountant has reconstructed it as shown by the instruments already mentioned is modified to the following extent:

The depreciation in arriving at the total value of the corpus allocable to buildings is disallowed. The Court is of the opinion from the evidence that the building which has been used by the Fletcher Manufacturing Company since 1907 is susceptible to ordinary repairs which would be chargeable out of income. Since the new trustees appointed by this Court have improved the building out of funds, the source of which is not known, and since the useful life of the building may extend beyond the trust period, the Court believes that,

while it might be good accounting practice, so far as the trust is concerned, the building should not be depreciated. It is said in Scott on Trusts, Section 239.4:

"Where the trust estate includes a building, the question arises whether the trustee can properly set aside, or is even under a duty to set aside, out of income a reserve for depreciation and obsolescence. Buildings ordinarily tend in course of time to become less valuable, both because of physical deterioration and because they are likely to become less suited to their purposes than those more recently built; in other words, they tend to become less valuable through depreciation and obsolescence. There is surprisingly little authority on the question whether the trustee has a power or a duty to set aside out of income a reserve for depreciation. It has not been the practice of trustees to set aside such a reserve. It has not been the practice of trustees in administering trusts to apply the principles which are applied by business men in the conduct of their business. Very possibly the need of setting aside a reserve for depreciation of buildings has not been acutely felt, either by trustees or beneficiaries or the courts, because of a feeling that the value of the land on which the building rests is likely to increase at least as fast as the value of the building depreciates. In a rough way in the past this has been true, but it is improbable that it will continue to be true in the future. Certainly during the years which followed the debacle of 1929 land values have not only ceased to rise but have fallen enormously.

"As far as the decisions go they indicate that the trustee is not under any duty to the remaindermen to set aside a reserve for depreciation of buildings, and even that he owes a duty to the life beneficiaries not to do so. That the trustee has no duty to set aside a reserve for depreciation, and is not liable to the remaindermen for failing to do so, seems to be indicated by the decisions." (Cases cited; also see Estate of Edgar, 157 Misc. 10, 282 N. Y. Supp 795 [1935].)

At page 1344, however, it is said:

"There are indications that where the trustee is conducting a business on the premises, such as a manufacturing business, he should set aside such a reserve." (Cases cited.)

On page 1345 it is said:

"The trust estate may include a building of which there is no likelihood of loss in value as long as it is kept in repair."

For a recent article on the subject, see Ohio State Law Journal, Vol. 12, No. 4, Autumn 1951, at page 565.

III. DOES THE PLAINTIFF HAVE A CHARGE AGAINST CORPUS FOR STREET AND SIDEWALK ASSESSMENTS?

This matter was mentioned briefly during the trial of the case and also in the brief of the plaintiff.

Plaintiff claims that $3699.81 was paid out of income. There is no evidence to show the source of the payment. In fact, the accountant testified that he did not know how it was paid. Miss Rasor said it was paid out of income, a mere conclusion. Also, there was no evidence as to the probable life of the improvement. Ordinarily street assessments would inure to the benefit of the corpus and should be paid out of this source and amortized over the probable life of the improvement where the assessment will not extend beyond the life of the trust.

It is said in Scott on Trusts, Section 233.3, at pages 1264 and 1265:

"The cost of improvements to property held as part of the principal is payable out of principal. This includes not only improvements made by the trustee but also special taxes or assessments for improvements such as the laying or paving of streets, the construction of sewers, and the like. It is sometimes said that the cost of such improvements is to be apportioned between life beneficiary and remainderman. * * *

"Where, however, the improvements are not of a permanent nature, especially where the probability is that they will not last longer than the probable duration of the trust, a further adjustment has to be made in order to treat both life beneficiary and remainderman fairly. In such a case the investment will be treated as a wasting investment, and the trustee is under a duty to the beneficiary who is entitled to the principal to make provision for amortization."

Also see Scott on Trusts, Section 239, pages 1332 and 1333. The Court cannot determine this question in the case at bar.

IV. SHOULD CERTAIN REPAIRS, REPLACEMENTS, AND IMPROVEMENTS MADE BY THE NEW TRUSTEES BE CHARGEABLE AGAINST CORPUS OR INCOME?

The evidence discloses that the corpus had deteriorated. The repairs, replacements, and improvements which were made by the trustees and which both sides conceded were necessary were paid out of a bank account, the source of which is unknown. The rules applicable to ordinary repairs, replacements, and improvements vary. These rules can be found by reading Scott on Trusts which this Court considers an excellent authority on the subject. See Sections 233, 233.1, 233.2, 233.3, and 239. Also see Restatement of Trusts, Sections 233 and 239. However, since the source of the funds which paid these improvements is, by reason of this opinion, corpus, the Court can make no ruling as the income beneficiary

has not sustained the burden of proof necessary to show that she has been prejudiced or that the remaindermen have gained an advantage to her detriment.

While the trustees are not a party to this proceeding. the Court is of the opinion that depreciation or the creation of reserves or the amortization of the cost of machinery and equipment used in the business is perfectly proper and should be continued.

The trustees should have been made parties to this proceeding, as some of the questions raised during the course of the trial related to trust administration which can never be ignored in any proceeding which seeks to declare rights and legal relations between successive beneficiaries. The Court asked the accountant what doubtful questions relative to income and corpus in this trust he had found which should be resolved. (See page 120 of transcript.) Some of these doubtful questions have already been answered, but the following question has not:

Is it necessary for the trustees to stick strictly to the will in distributing the income quarterly or may the trustee make advances to the beneficiaries and make a distribution once a year when they determine a gain or loss for the year?

In view of the evidence the Court is of the opinion that, while income must be paid quarterly as provided by the will, the trustees may withhold a reasonable amount of income to meet present or anticipated expenses which are properly chargeable to income until the end of the year at which time all net income must be distributed. The Court calls counsel's attention to Section 182, pages 968 and 969, Scott on Trusts, which in part reads as follows:

"The trustee can properly withhold enough of the gross income to meet not only present but anticipated expenses which are chargeable to income. In order to equalize the income from year to year he may estimate in advance probable expenditures and build up a reserve to meet such expenditures."

Also see Restatement of Trusts, Section 182, page 467; **In re Sedgwick, 74 Oh Ap 444, 30 O. O. 65 (1944), Syllabus 8.** In view, however. of the strong language used in the will with respect to paying income quarterly, the Court suggests that the trustees obtain a consent from the income beneficiaries each time income is to be withheld. This would avoid any future liability on the part of the trustees for failure to distribute quarterly even though this Court is of the opinion under proper circumstances some of the income can be withheld until the end of the year.

In conclusion, therefore, on the evidence and the law, this

Court finds all the parties to be in status quo with respect to the trust res and the distribution of income, subject, of course, to any modification contained in this opinion. It is expected that the present trustees will go forward in administering the trust as it has been reconstructed with the cost of repairs, improvements, and replacements being charged as they were charged in the accounts already submitted without recovery from either side against the other. From this point on the trustees are to follow recognized trust law with respect to charging income and corpus and when in doubt to seek the determination of this Court. It is believed that under all the circumstances of the case as disclosed by the evidence equitable conclusions have been reached and substantial justice accomplished.

Even though the trustees were not made parties, the trust will benefit from the declaration of rights resulting from this litigation; wherefore, it is the judgment of this Court that costs of this proceeding shall be charged one-half (½) to income and one-half (½) to principal. The Court is also of the opinion that compensation to counsel for services rendered the beneficiaries shall be charged in the same manner upon proper application of the trustees. See §10506-52 GC.

Counsel may submit an appropriate entry.