In the Matter of the Estate of JACOB J. SIEGEL, Deceased. BENJAMIN SIEGEL et al., Individually and as Executors of JACOB J. SIEGEL, Deceased, Appellants; LAURENCE ROSENTHAL et al.. as Special Guardians, et al., Respondents.

Second Department, April 15, 1968.

*Weiss & Kolish* (*Manuel Weiss* of counsel), for appellants.

*Laurence Rosenthal*, special guardian, respondent in person.

*Edward M. Cameron, Jr.*, special guardian, respondent in person..

HOPKINS, J. The chief issue tendered by this appeal is whether the income beneficiaries of trusts established under the will of the testator are entitled to recoup, from principal, amounts equal to the estate's shares in the income of a partnership and a syndicate in which the estate has undivided shares (the subject income was retained by the partnership and by the syndicate for specific purposes). The Surrogate has held that the proper allocation of such income should not be determined until the payments have been actually received by the executors (*Matter of Siegel*, 44 Misc 2d 668). Appellants (two of the executors) contend that this disposition is erroneous.

The testator died on September 12, 1960. His will erected three trusts. Ruth, his wife, is the life beneficiary of the first trust and is granted the entire income, provided that, if the income be less than $18,000 annually, the deficit shall be supplied from principal. On Ruth's death, Joan Schepps, the testator's daughter, becomes the prime life beneficiary, with so much income from the trust as shall, with the income payable to her from all three trusts, aggregate $25,000. On Joan's death, the trust terminates and the principal is to be divided, one half to Joan's children (represented by special guardian Cameron) and one half to two nephews and a niece (children of these nephews are represented by special guardian Rosenthal).

The second trust names Benjamin, the testator's brother, as the prime life beneficiary and provides that he shall receive an income not in excess of $15,000 annually; on his death, the trust is to continue for the life of Benjamin's wife, but the income payable to her is to be limited to $5,000 annually. On her death, the principal is to be divided, one half to Joan (or to her children,

if she be deceased) and one half to the same nephews and niece.

The third trust named Joan as the prime life beneficiary and provides for income payments to her not in excess of $15,000 annually; on her death, the principal is to be divided, one half to her children and one half to the same nephews and niece.

Out of any excess income arising from the second and third trusts and from the first trust after Ruth's death, certain bequests are payable to named legatees in amounts which are not material on this appeal. Five beneficiaries (Ruth, Benjamin, Joan, a sister of the testator, and a nephew) are currently receiving income. Ruth, Benjamin and a nephew, Allan Altman (one of the nephew-remaindermen; he is also a contingent income beneficiary) are the executors (the will also designates them as the trustees); they instituted this proceeding.

The estate is interested as owner in two income producing parcels of real estate: the Gair properties, in which its interest as a syndicate participant is in the proportion that $75,000 bears to $2,790,000; and the Jewelry Center Building in which it holds as tenant in common an undivided one-quarter interest. From both assets the estate has derived annual income, distributed respectively by the syndicate and by a management company formed by the tenants in common.

Neither the syndicate nor the management company, however, has distributed all the income collected from the properties. Thus, the syndicate has retained $3,947.55, representing a payment by the lessee of the Gair properties of a sum equivalent to the mortgage amortization, etc., payable as additional rental. In addition, the management company has retained $23,409.04 (made up, according to an undisputed statement in special guardian Cameron's brief, of $17,912.18 representing mortgage amortization, $4,135.45 for building depreciation, and $1,361.41 for current operations), as well as $2,077.75 in real estate tax refunds.

The executors applied to the Surrogate for instructions as to the allocation of these amounts either to principal or income. However, it was their submission that the retained funds should be considered as income.

Article Fifteenth of the will provides that income shall be paid quarter-annually to the beneficiaries. Article Twenty-Seventh stipulates that no reserve shall be set aside for depreciation. Article Twenty-Fifth deals with the disposition of the assets of the estate or of any trust created under the will. It reads in part as follows: "I authorize and empower my executors and/or trustees to postpone until such time as in their judgment shall be deemed expedient the sale, calling in

or conversion of any part of my real or personal estate, and to retain and continue for the purposes of any of the trusts herein provided for any investment in real or personal property in which any part of my estate shall be at the time of my death. *Until such sale, calling in or conversion,* the rents of my said real estate and *the income from my said personal estate shall be deemed income for the purpose of this, my will*" (emphasis added).

Generally, amortization payments and reserves for depreciation are chargeable to the principal of a trust rather than to income (*Matter of Chapman,* 32 Misc. 187, affd. 59 App. Div. 624, affd. 167 N. Y. 619; *Matter of Davies,* 197 Misc. 827, affd. 277 App. Div. 1021; *Matter of Ottmann,* 197 Misc. 645; *Matter of Edgar,* 157 Misc. 10; cf. *Matter of Danziger,* 58 N. Y. S. 2d 790, mod. 271 App. Div. 888). But in the cases which applied the rule the trustees had received the moneys in question and had set them aside as sinking funds or reserves. Thus, in *Chapman (supra),* the trustee had received income from property in which the estate held a three-eighths interest; in *Edgar (supra),* the trustee had placed income from property in which the estate was half owner in a fund for depreciation; and, in *Danziger (supra),* the trustee had erected reserves for depreciation and amortization out of income received from property in which the trust had a half interest. In each instance it was held that the reserves could be established only from principal.

In the case before us the executors have not received the funds in dispute; nor have they taken any action to establish the reserves. That action has been taken by independent entities — by a management company (with respect to the Jewelry Center Building) and by a syndicate (with respect to the Gair properties). In neither asset did the estate have the major interest. In a large sense, then, the instructions sought relate to funds concerning which the executors cannot exert control and over which they have not attempted to secure possession.

As fiduciaries, the executors must be impartial in dealing with the allocation of funds between principal and interest (3 Scott, Trusts [3d ed.], § 232). As income beneficiaries, it may be to their advantage to obtain from principal the equivalent amounts withheld by the entities managing the assets in which the estate is interested; yet, in the event that for some reason not now known, and even unforeseeable, the funds were never received by the estate, the deficit in principal would necessarily remain.

The testator provided for a minimum annual income for the benefit of his wife only. There is no showing in this record

that the income actually received by her has been less than the stipulated amount of $18,000 annually. The will imposes a maximum limit as to annual income payable to the other prime income beneficiaries; and there is no claim that the maximum has not been paid to them. Thus, there is no evidence that the prime income beneficiaries have been slighted to the advantage of the remaindermen. It is, of course, the accepted precept that the principal of a trust shall be preserved unless a contrary intent is expressed in the will " in the very clearest manner " (*Matter of Stevens,* 187 N .Y. 471, 476).

Moreover, the executors are in a position to protect their interests. In the event they believe that the sums undistributed have been unreasonably or unlawfully retained by the management company or the syndicate, they may in the name of the estate bring appropriate proceedings to compel a disbursement.

Hence, it is our opinion that the Surrogate was correct in maintaining an equitable balance between principal and income, to refuse to permit an invasion of principal equivalent to the funds undistributed, and to await the receipt of the funds before determining an allocation. We consider that, as in other aspects of the supervision and oversight of estates, the jurisdiction of the Surrogate is essentially equitable (cf. *Matter of Ambrose,* 12 A D 2d 687; *Matter of Beach,* 122 Misc. 261, affd. 208 App. Div. 831; *Matter of Scott,* 135 Misc. 661; SCPA 201, eff. Sept. 1, 1967). In adjusting a fair division between income beneficiaries and remaindermen, we should not enforce an absolute rule without regard to the circumstances of the case; nor should we fetter the discretion of the Surrogate to deal equitably and broadly with the affairs of the estate.

We have examined the other contentions made by the appealing executors on this appeal and find no cause to disturb the determination made by the Surrogate.

The decree therefore should be affirmed insofar as appealed from, without costs.

BENJAMIN, J. (dissenting). In my opinion, the Surrogate's decree should be modified so as to direct the executors to pay over to the income beneficiaries, from principal, sums equal to the undistributed earnings of the realty partnerships or syndicates in which the estate is interested, which earnings were retained by the said partnerships or syndicates for depreciation reserves and mortgage amortization payments.

Certain realty partnerships or syndicates, in which this estate has an interest, have retained from current income funds which they intend to use for depreciation reserves and

mortgage amortization payments; and they have not paid over to the estate its prorata share of the funds so retained. Since the retention of those sums has to that extent decreased the income now payable to the income beneficiaries of this estate, the executors requested permission now to withdraw an equivalent sum from principal and pay it over to the income beneficiaries. This application was opposed by the special guardians of certain infants. The learned Surrogate denied the executors' request on the ground that it was premature unless and until the partnerships or syndicates actually paid over those sums to the executors or trustees.

In my opinion, this determination was erroneous and the executors' request should have been granted. It is well settled that mortgage amortization payments and depreciation reserves are chargeable to principal, not income (*Matter of Chapman,* 32 Misc. 187, affd. 59 App. Div. 624, affd. 167 N. Y. 619; *Matter of Davies,* 197 Misc. 827, affd. 277 App. Div. 1021; *Matter of Danziger,* 58 N. Y. S. 2d 790, mod. on other grounds 271 App. Div. 888; *Matter of Edgar,* 157 Misc. 10). The retention of income for these purposes by the partnerships or syndicates thus improperly increases the principal of this estate at the expense of the income which rightfully belongs to the income beneficiaries. If the income beneficiaries are compelled to wait for these moneys until and if they are paid over to the estate by the partnerships or syndicates (as the Surrogate decreed), they probably will never receive them during their lifetimes, since the mortgage amortization payments will have been made and the depreciation reserves set up and maintained on the partnership books. Hence, what will undoubtedly happen here, if the Surrogate's decree stands, is that upon the termination of the trust estates (by reason of the death of the income beneficiaries) the trust principals will be turned over to the remaindermen, and at that time the estates of the income beneficiaries will be entitled to recoup from principal the sums now being withheld by the partnerships or syndicates for mortgage amortization and depreciation.

In short, the income beneficiaries are entitled to the income being retained by the partnerships or syndicates for the above-stated purposes, and sooner or later they or their heirs will get those sums. In my view, it is unfair to the income beneficiaries to deprive them of these moneys during their lifetimes, and to delay their receipt of them until such time as only their heirs can reap the benefit. Nor can the internal bookkeeping procedures of managerial agents deprive these income beneficiaries of their vested rights. And, under the holdings in

*Chapman, Davies, Danziger* and *Edgar* (*supra*), it is improper to deny them the payment of these moneys *now*, since these moneys are *now* being so used as to effect a present accretion to principal. Neither on equitable nor on legal grounds do I see any reason here to disregard the plain rule of those cases.

Accordingly, I dissent in part and vote to modify the decree as indicated above.

BRENNAN, Acting P. J., RABIN and MUNDER, JJ., concur with HOPKINS, J.; BENJAMIN, J., dissents in part, with opinion.

Decree affirmed insofar as appealed from, without costs.